STATE of Utah, Plaintiff and Appellee,

v.

Gaylynn SINGLETON, Defendant
and Appellant.

No. 920053–CA.

Court of Appeals of Utah.

June 1, 1993.

Joan C. Watt and Richard G. Uday, Salt Lake City, for defendant and appellant.

Jan Graham and Marian Decker, Salt Lake City, for plaintiff and appellee.

Before JACKSON, RUSSON and BILLINGS, JJ.

## OPINION

BILLINGS, Presiding Judge:

Defendant Gaylynn Singleton appeals her conviction for possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1992). She argues the warrant on which the search of her residence was based was not supported by probable cause, and thus the trial court erred by failing to suppress evidence obtained during the search of her home. We affirm.

## FACTS

On March 25, 1991, a magistrate issued a daytime search warrant based on an affidavit alleging defendant was in the business of distributing controlled substances for profit. The warrant authorized a search

for drugs, packaging material, drug paraphernalia, currency, items relating to travel between Salt Lake City and South America, and records of narcotics sales. Officers executed the search warrant on March 27, 1991. They seized five-sixteenths of an ounce of cocaine divided into five separate packages, one ounce of marijuana divided into eight separate packages, and assorted packaging material.

Detective Jerry Rigby of the Salt Lake County Sheriff's Office executed the affidavit to support the search warrant.[1] The affidavit included information gathered by Detective Rigby over an eight month period, from August 1990 to March 25, 1991. Detective Rigby obtained information from four separate confidential informants, fellow officers, court records, the National Crime Information Center, the Drug Enforcement Agency (DEA), the Utah Department of Investigations, and U.S. West Communications.

On July 7, 1990, the first confidential informant told an officer assisting Detective Rigby in the investigation of defendant that defendant was involved with the sale of controlled substances. Informant One claimed defendant was in partnership with Steven Perry and the two had taken over the cocaine business of Milton Singleton, defendant's husband.[2] Informant One further related that defendant traveled to Bolivia and stayed with a man named Ronnie Iriarte, a purported international drug smuggler who is wanted by the FBI for distribution of cocaine. Informant One also stated defendant made frequent telephone calls to Iriarte in Bolivia.

Detective Rigby received additional information from two other confidential informants through Special Agent David Paull of the DEA, who personally received the

information during July and August of 1990. Both Informant Two and Informant Three claimed defendant was involved in the distribution of cocaine and that she used a pager as part of her method of operation. Informant Two personally observed defendant receive pages on her pager and return at least one phone call relating to the distribution of cocaine. Informant Two also provided the number of defendant's pager.

On February 14, 1991, Detective Rigby received information from a fourth confidential informant, after that person had entered into a plea bargain in an unrelated drug case. Informant Four purchased cocaine directly from defendant in October, 1990 at defendant's residence in West Valley City, Utah. Informant Four also stated she purchased cocaine from defendant at other locations and always contacted defendant through a pager.

Detective Rigby verified the information obtained from the four confidential informants through: (1) periodic surveillance of defendant's residence where Steven Perry was seen as recently as February 26, 1991; (2) interception of electronic communications to defendant's pager number, whereby Detective Rigby verified that six people calling defendant's pager had a criminal history, four having been previously arrested for drug violations; and, (3) corroborating information regarding defendant and her drug ties to South America by speaking with other officers who were conducting an independent investigation of defendant and Steven Perry for drug violations from January through August of 1990.

Prior to trial, defendant filed a motion to suppress the evidence seized from her home during the warrant-supported search. The trial court denied defendant's motion.[3]

---

1. We recite the facts as they are set out in the affidavit in support of the search warrant.

2. In June 1979, Salt Lake County Sheriff's Officers arrested defendant and her husband, Milton Singleton, after seizing approximately eight pounds of marijuana during a search of their home. However, the charges stemming from this search were later dismissed. Milton Singleton was arrested on January 29, 1986, for possession of five kilograms of cocaine and was

subsequently convicted and sentenced to twenty-five years in prison.

The affidavit, however, failed to note that defendant had petitioned for a divorce from Milton Singleton and had been legally separated from him for several years.

3. The trial court ruled:
   1. The totality-of-the-circumstances test is the appropriate test to determine whether probable cause for issuance of a search war-

Defendant explicitly reserved the right to appeal the trial court's ruling on the motion to suppress. *See State v. Sery,* 758 P.2d 935, 939 (Utah App.1988).

On December 9, 1991, defendant entered a conditional plea of guilty to a reduced charge of one count of possession of a controlled substance, a third degree felony. Defendant was sentenced to zero to five years in the Utah State Prison and fined $200. Defendant's prison term was stayed pending completion of a thirty-six month term of probation.

On appeal, defendant argues the trial court erred by not suppressing the evidence obtained during the warrant-supported search of her home on March 27, 1991 because: (1) the affidavit was insufficient to establish probable cause under the Fourth Amendment to the United States Constitution, (2) the affidavit was insufficient to establish probable cause under article I, section 14 of the Utah Constitution, (3) the warrant cannot be saved by the "good faith exception" to the exclusionary rule because officers could not reasonably rely on it, and, (4) a good faith exception should not apply under the Utah Constitution.[4]

## STANDARD OF REVIEW

■ We do not "conduct a de novo review of the magistrate's probable cause determination," but defer to the magistrate's decision on whether a warrant is supported by probable cause. *State v. Babbell,* 770 P.2d 987, 991 (Utah 1989). *See also State v. Thurman,* 846 P.2d 1256, 1259–60 (Utah 1993). *Accord Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331 (1983); *Salt Lake City v. Trujillo,* 854 P.2d 603, 606–07 (Utah App.1993); *State v. Purser,* 828 P.2d 515, 517 (Utah App.1992). Our review, however, is not a cursory one. We will invalidate a search pursuant to a warrant "if the magistrate, given the totality of the circumstances, lacked a 'substantial basis' for determining that probable cause existed." *Thurman,* 846 P.2d at 1260 (quoting *Babbell,* 770 P.2d at 991). *Accord State v. White,* 851 P.2d 1195, 1197–99 (Utah App.1993).

Defendant first argues the affidavit supporting the warrant was insufficient to establish probable cause under the Fourth Amendment to the United States Constitution. Specifically, defendant contends the affidavit failed to establish the veracity and reliability of the four confidential informants, lacked sufficient detail to demonstrate the basis of their information, and was based upon "stale" information.

■ The test for the sufficiency of an affidavit supporting a search warrant under the Fourth Amendment is set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates,* the Supreme Court expressly abandoned application of the previously used, hypertechnical, *Aguilar–Spinelli* "two-pronged test"[5]

---

rant existed. The veracity of a confidential informant and the basis of knowledge of a confidential informant are important factors. However, in this case, since the information provided by each of the four separate confidential informants was detailed and specific and [corroborated] by the information provided by each of the other confidential informants and by the information obtained by the independent investigation of affiant and his fellow officers, no further evidence of the informants' veracity and bases of knowledge was required.

2. Under the totality-of-the-circumstances test, the affidavit and search warrant contain enough facts for the signing magistrate to determine that there was a fair probability that contraband or evidence would be found on the premises located at 4150 South 6180 West, West Valley City, Utah.

3. The continuing nature of the criminal activity involved, the length of time defendant was alleged to have been involved in the activity, and the nature of the items to be searched all provide enough evidence for the signing magistrate to determine probable cause still existed to search [Singleton's] premises . . . on March 25, 1991.

4. Because we find the affidavit was sufficient to establish probable cause, we do not consider defendant's arguments regarding the good faith exception to the exclusionary rule.

5. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The two-prong test required the affidavit to set forth sufficient underlying circumstances to establish both (1) the basis of knowledge of the informant, and (2) the infor-

and embraced a "totality-of-the-circumstances test." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Id.* (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

Utah has applied the totality-of-the-circumstances analysis when determining whether an affidavit sets forth facts sufficient to establish probable cause under the Fourth Amendment. *See, e.g., Thurman,* 846 P.2d at 1259–62; *State v. Hansen,* 732 P.2d 127, 130–31 (Utah 1987); *White,* 851 P.2d at 1197–1200.

Utah courts, however, have used the *Aguilar–Spinelli* factors as guides in applying the totality-of-the-circumstances test. "[A]n informant's 'reliability' and 'basis of knowledge' are but two relevant considerations, among others, in determining the existence of probable cause under 'a totality-of-the circumstances.'" *Hansen,* 732 P.2d at 130 (citing *Gates,* 462 U.S. at 231–32, 235–36, 103 S.Ct. at 2328–31). *See also State v. Purser,* 828 P.2d 515, 517 (Utah App.1992). The *Aguilar–Spinelli* guidelines are not applied as "strict, independent requirements to be 'rigidly exacted' in every case. A weakness in one or the other is not fatal to the warrant so long as in the totality there is substantial basis to find probable cause." *Hansen,* 732 P.2d at 130 (citing *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332). Thus, the significance of each factor involved in a finding of probable cause differs on a case-by-case basis. *See id.; Purser,* 828 P.2d at 517.

▮ A search warrant may be issued when, under the totality-of-the-circumstances, the information given by multiple confidential informants is sufficient to establish probable cause. This is true even if an individual informant's information would not establish probable cause if considered separately. *See State v. Bailey,* 675 P.2d 1203, 1205–06 (Utah 1984); *Purser,* 828 P.2d at 517.

▮ When viewed under the totality-of-the-circumstances, we conclude the affidavit contained sufficient information for the magistrate to conclude the informants were reliable and their basis of information was sufficient. At the core of the magistrate's finding of probable cause is the testimony of Informant Four that she personally purchased drugs from defendant at her home and contacted defendant through a pager. Defendant challenges the veracity and reliability of Informant Four because she was providing information pursuant to a plea bargain arrangement. We find this challenge unpersuasive.

Informant Four provided first-hand information of drug sales which was verified and bolstered by three other confidential informants. Informant One told Detective Rigby that: (1) defendant was involved with the sale of controlled substances; (2) defendant was in partnership with Steven Perry and the two had taken over the cocaine business of Milton Singleton; (3) defendant traveled to Bolivia and stayed with Ronnie Iriarte, a purported international drug smuggler wanted by the FBI for distribution of cocaine, and (4) defendant made frequent telephone calls to Iriarte in Bolivia.

Informants Two and Three reported that defendant was involved in the distribution of cocaine and she used a pager as part of her method of operation. Informant Two provided the number of defendant's pager. Informant Two also observed defendant receive pages and watched her return at least one phone call relating to the distribution of cocaine.

mant's veracity and reliability. *See Gates,* 462    U.S. at 228–29, 103 S.Ct. at 2327.

Detective Rigby's verification efforts included: (1) periodic surveillance of defendant's residence where he observed Steven Perry; (2) interception of communications to defendant's pager number from known drug users; and (3) speaking with officers from the Utah State Department of Investigations whose independent investigation of defendant and Steven Perry linked defendant with drug activities in Bolivia. Thus, the magistrate was correct in determining the information was reliable.

In addition to arguments based on the informants' reliability and veracity, defendant asserts the information was stale. The freshness of the information or "[t]he length of time between the events relied upon to obtain a search warrant and the date of issuance bears upon probable cause." *Smith v. State*, 438 So.2d 896, 897 (Fla.Dist.Ct.App.1983). However, the " 'mere passage of time does not necessarily invalidate the supporting basis for the warrant.' " *State v. Stromberg*, 783 P.2d 54, 57 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990) (quoting *Hansen*, 732 P.2d at 131). " '[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.' " *State v. Brown*, 798 P.2d 284, 287 (Utah App.1990) (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972)). *See also Stromberg*, 783 P.2d at 57.

Here, the affidavit recites facts indicating defendant was involved in continuous and ongoing criminal activity at defendant's residence. The affidavit delineated a substantial history of controlled substance violations by defendant involving her residence. On several occasions surveillance officers saw a known drug trafficker at defendant's residence. Detective Rigby received information of drug sales activity at defendant's residence as recently as one month prior to obtaining the search warrant. Several communications

with known criminals who had previously been arrested for drug violations were intercepted from defendant's pager. Defendant was linked to Bolivian drug activity by both Detective Rigby's investigation and a separate investigation by the Utah State Department of Investigations.

Further, the affidavit delineated a possible drug conspiracy which is especially indicative of ongoing, contemporaneous criminal activity. *See United States v. Feola*, 651 F.Supp. 1068, 1090 (S.D.N.Y.1987) (stating "[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which courts have relaxed the temporal requirements of non-staleness"), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied sub nom. Marin v. United States*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). Finally, Detective Rigby's eighteen years of experience and expertise in controlled substance investigations gives considerable weight to his "present tense" conclusions in the affidavit. *See State v. Anderton*, 668 P.2d 1258, 1261 (Utah 1983) (holding present tense language in affidavit describes ongoing criminal activity and refutes contention it was based on stale information). Viewed under the totality-of-the-circumstances, the information contained in the affidavit sufficiently demonstrates probable continuous and contemporaneous criminal activity at defendant's residence. Accordingly, we reject defendant's staleness argument and find the trial court was correct in denying defendant's motion to suppress because probable cause existed under the Fourth Amendment.

Defendant next argues that even if the search warrant is sufficient under the Fourth Amendment, we should invalidate it under article I, section 14 of the Utah Constitution.[6] Defendant exhorts this court to adopt the two-pronged *Aguilar–Spinelli* test, rather than the *Gates* totality-of-the-circumstances test, for determining whether information obtained from a confidential

**6.** That section provides:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but

upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.
Utah Const. art. I, § 14.

informant is sufficient to establish probable cause under article I, section 14 of the Utah Constitution. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Defendant argues "various reasons exist for embracing the *Aguilar–Spinelli* test ... rather than the more nebulous 'totality-of-the-circumstances' test" and broadly refers to the "unique circumstances under which the Utah Constitution was enacted."

Defendant fails to recognize both this court's and the Utah Supreme Court's articulated preference for the totality-of-the-circumstances test when reviewing probable cause determinations. *See, e.g., State v. Thurman*, 846 P.2d 1256, 1259–60 (Utah 1993); *State v. Hansen*, 732 P.2d 127, 130 (Utah 1987); *Salt Lake City v. Trujillo*, 854 P.2d 603, 608 (Utah App.1993); *State v. White*, 851 P.2d 1195, 1197–99 (Utah App. 1993); *State v. Rosenbaum*, 845 P.2d 962, 964 (Utah App.1993); *State v. Purser*, 828 P.2d 515, 517 (Utah App.1992). We see no reason to abandon our prior approach.

## CONCLUSION

Under the totality-of-the-circumstances, the affidavit underlying the warrant to search defendant's residence was sufficient to establish probable cause under both the Fourth Amendment to the United States Constitution and article 1, section 14 of the Utah Constitution. We therefore affirm the trial court's denial of defendant's motion to suppress the evidence obtained during the search of defendant's home.

JACKSON and RUSSON, JJ., concur.