2002 UT App 433

**STATE of Utah, Plaintiff and Appellant,**

v.

**Randy Peter KRUKOWSKI, Defendant and Appellee.**

No. 20010585–CA.

Court of Appeals of Utah.

Dec. 27, 2002.

Mark L. Shurtleff, Attorney General, Brenda J. Beaton, and Jeffrey S. Gray, Asst. Attorneys General, Salt Lake City, for Appellant.

Stephen R. McCaughey, McCaughey & Metos, Salt Lake City, for Appellee.

Before Judges JACKSON, BILLINGS, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 The State appeals the trial court's grant of Randy Krukowski's motion to suppress. We affirm.

## FACTUAL BACKGROUND

¶ 2 In March 1999, two confidential informants informed Detective Mike McNaughton that someone named "Randy Kawalski" was manufacturing methamphetamine inside unit 16 of the Midvale Self Storage Facility. Based on McNaughton's history with these same informants, who had guided police to several other methamphetamine labs in the recent past, he went to the storage facility and observed a truck registered to a Randy Peter Krukowski parked near unit 16. McNaughton then summoned a K–9 unit and several narcotics task force officers for assistance. Upon arrival, McNaughton asked the dog handler to walk the entire facility. After the dog handler rejected this suggestion, McNaughton guided the dog and its handler to units 15 through 18, and the dog alerted in front of unit 15. The dog handler surmised, based upon the way the wind was blowing and because a door to unit 16 was slightly open, that there were narcotics in unit 16. Thereafter, McNaughton and another officer knocked on the door to unit 16. Krukowski answered the door and came outside to speak

with the officers, shutting the door behind him. The officers told Krukowski that they suspected him of involvement with drugs and requested entry into the unit. Krukowski refused. Over Krukowski's objection, and without a warrant, the officers entered and quickly searched the unit, observing what appeared to be equipment consistent with a clandestine methamphetamine lab. The officers left, disconnected the electricity to the unit, and detained Krukowski while McNaughton sought a search warrant. The State concedes on appeal that this first search was illegal.

¶ 3 McNaughton presented his warrant affidavit to the magistrate, but he did not reveal, either in the affidavit or in his discussion with the magistrate, that the officers had already entered the unit prior to seeking the warrant. Based upon the incomplete affidavit, McNaughton obtained the warrant, returned to the storage facility, conducted a search, seized the contents as elements of a clandestine methamphetamine lab, and arrested Krukowski.

¶ 4 The State charged Krukowski with operation of a clandestine lab, a first degree felony, and unlawful possession of a controlled or counterfeit substance with intent to distribute, a second degree felony. Relying upon *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and *State v. Nielsen*, 727 P.2d 188, 190 (Utah 1986), Krukowski filed a motion to suppress all evidence obtained from the search. Krukowski argued that the search warrant was invalid because McNaughton had knowingly or recklessly omitted the material fact of his prior illegal entry from the warrant affidavit.[1] In his memorandum, Krukowski stated:

Had McNaughton included these details concerning his pre-warrant investigation, this would have undermined probable cause for the warrant.... Had the magistrate been informed of this conduct, he would have viewed the entire search warrant affidavit with skepticism, because the

---

1. Krukowski also asserted that the affidavit was inherently misleading and did not establish probable cause, that the warrant was unconstitutionally general, and the magistrate abandoned his detached and neutral role. Because the State appeals the grant of Krukowski's motion to suppress, and thereby focuses the issues on appeal, we address only the affect of the officer's failure to inform the magistrate of his prior illegal entry.

whole application hinges on the credibility of the police and affiant, McNaughton.

In response, the State asserted that the independent source doctrine applied, arguing that the search warrant was based only on information available to McNaughton prior to his illegal entry.

¶ 5 After a hearing on the merits, the trial court granted Krukowski's motion to suppress and directed him to file proposed conclusions of law and findings of fact. The State objected to the proposed conclusions of law and findings of fact proffered by the defense. Most relevant, the State objected to the proposed finding that McNaughton would not have sought a search warrant but for the prior illegal entry and search of unit 16. The trial court overruled the State's objection and stated:

> [T]he court is satisfied that the State has not shown that the search warrant would have been obtained *but for* the fact that Detective McNaughton performed a constitutionally invalid search of the premises before obtaining the warrant.... Detective McNaughton apparently chose to violate the defendant's Fourth Amendment rights by conducting an illegal search to satisfy himself that there was a basis to go to the effort to obtain a search warrant. Based upon the fact that Detective McNaughton did not advise [the magistrate] of the fact that he had made an illegal entry into the defendant's premises ... this Court has little confidence in the testimony of Detective McNaughton on this issue.

(Emphasis added.)

¶ 6 In its final order, the trial court explained that "[t]he record does not persuade the Court that Detective McNaughton would have sought a warrant without first entering the storage shed, but demonstrates that the reason that Detective McNaughton entered the storage shed initially was to investigate the case further before deciding whether to seek a warrant."

¶ 7 Following the court's ruling, the State dismissed all charges against Krukowski and now appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 The State argues that the trial court incorrectly granted Krukowski's motion to suppress.

> The factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence are reviewed under the deferential clearly-erroneous standard, and the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts.

*State v. Moreno,* 910 P.2d 1245, 1247 (Utah Ct.App.1996) (citing *State v. Pena,* 869 P.2d 932, 935, 940 (Utah 1994)).

## ANALYSIS

¶ 9 The State first argues that the trial court granted Krukowski's motion to suppress because it misinterpreted *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), as requiring an officer seeking a warrant to inform the issuing magistrate of any prior illegal entries. In *Murray,* federal agents stopped two automobiles after observing them enter and leave a warehouse under surveillance for drug trafficking. *See Murray,* 487 U.S. at 535, 108 S.Ct. at 2532. After finding marijuana in both automobiles, the agents entered the warehouse without a warrant and discovered several bales that were later confirmed to be marijuana. *See id.* Without disturbing any evidence, the agents returned to their surveillance while they waited for another agent to secure a search warrant. *See id.* However, "[i]n applying for the warrant, the agents did not mention the prior [warrantless] entry, and did not rely on any observations made during that entry." 487 U.S. at 535–36, 108 S.Ct. at 2532. After obtaining the warrant, the agents returned to the warehouse and seized the marijuana. *See id.* On appeal, the Supreme Court applied the "independent source doctrine." 487 U.S. at 542, 108 S.Ct. at 2535–36.

¶ 10 The Court explained that under the independent source doctrine, evidence discovered during an unlawful search should not be suppressed if the evidence is "later obtained independently from activities untainted by the initial illegality." 487 U.S. at 537, 108

S.Ct. at 2533. The Court also stated that to apply the independent source doctrine to situations involving a prior illegal entry followed by a search executed pursuant to a warrant, the "[trial] court must be satisfied that a warrant would have been sought without the illegal entry." 487 U.S. at 540 n. 2, 108 S.Ct. at 2535 n. 2.

⬛ 11 The Court further held that a police officer's assurances that he would have sought a search warrant absent the results of a prior illegal search are not necessarily "given dispositive effect." *Id.* "Where the facts render [the officer's] assurances implausible, the independent source doctrine will not apply." *Id.*

¶ 12 In ruling on the State's objections to Krukowski's proposed conclusions of law and findings of fact the trial court stated that *Murray*

requires an officer to inform a magistrate of the prior illegal entry in order to meet the heightened burden of convincing the magistrate that whatever was found during the initial illegal entry was not used to establish probable cause. In other words, ... the magistrate is placed in the position of making a neutral and objective assessment of whether the officers truly did not rely on the evidence found during the illegal entry and whether they have proven this point under the heightened burden imposed because of the illegal entry. A magistrate who is not informed of the illegal entry would have no way of making this assessment and would, in fact, be applying a lesser burden than required under *Murray.*

The State seizes upon this language as evidence that the trial court misinterpreted *Murray.* The State correctly reads *Murray* as not explicitly requiring officers to inform a magistrate of a prior illegal entry. However, the State fails to mention that the trial court, in its final order, correctly explained that

[u]nder *Murray,* the government bears the burden to establish that the police were not prompted to obtain a warrant by what they found in the unlawful search, but would have sought a warrant on the basis of what they knew prior to entering the shed. By doing so [conducting an unlawful

search], he would risk suppression of all evidence on the premises, both seen and unseen, since his action would add to the normal burden of convincing a magistrate that there is probable cause *the much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it.*

(Quotations and citations omitted) (alterations in original.) After reviewing *Murray,* we conclude that, here, the trial court correctly set forth an officer's obligation of candor before a magistrate. We also conclude that the trial court correctly set forth the very real risk that evidence may be suppressed if an officer's lack of candor comes to light at trial.

¶ 13 Moreover, had the trial court, as argued by the State, actually imposed a heightened burden on officers to convince the magistrate that the prior illegal entry did not motivate their seeking the search warrant, we would find no error. We find support for an officer's obligation of candor within our existing case law.

⬛ ¶ 14 In *State v. Nielsen,* 727 P.2d 188 (Utah 1986), the Utah Supreme Court noted that "law enforcement officer[s] must be aware not only of the need for accuracy in the information provided to a magistrate in support of an application for a search warrant, but also of the importance of absolute truthfulness in any statement made under oath." *Id.* at 191; *see also id.* at 194 (Stewart, J. dissenting) ("The integrity of the process is dependent upon truthful affidavits that establish probable cause."). Thus, we conclude that an officer must be forthcoming about any conduct related to the search warrant request so that a magistrate can determine, independently, how, or if, the prior conduct impacts a probable cause determination.

⬛ ¶ 15 The State next attacks the trial court's factual finding that McNaughton would not have sought the search warrant but for his prior illegal entry into unit 16. This particular finding was predicated upon a

determination that McNaughton was not a credible witness. When challenging a trial court's factual findings, the appellant " 'must show that, even when viewing the evidence in a light most favorable to the trial court's ruling, the evidence is insufficient to support the trial court's findings.' " *State v. Gamblin,* 2000 UT 44, ¶ 17 n. 2, 1 P.3d 1108 (citations omitted) (emphasis omitted). Furthermore, we do not disturb credibility determinations unless the trial court exceeded its permitted range of discretion. *See Bruner v. Carver,* 920 P.2d 1153, 1158 (Utah 1996) (noting that because trial courts are "in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole," appellate courts grant broad discretion to trial courts on such matters).

¶ 16 At trial, McNaughton denied that he had entered the storage shed for the purpose of seeing what was inside prior to obtaining a warrant. He also denied that the prior illegal entry motivated his decision to seek a search warrant because he believed that he already had probable cause to obtain a search warrant before the illegal entry. In ruling on the State's objections to the proposed conclusions of law and facts, the trial court explained that it did not find McNaughton's testimony, that he would have sought the warrant absent the prior illegal entry, to be believable. The trial court stated:

> Based upon the fact that Detective McNaughton did not advise [the magistrate] of the fact that he had made an illegal entry into the defendant's premises, and did in fact ascertain that there was drug manufacturing in the defendant's premises when he was presenting information to [the magistrate] for issuance of a warrant, *this Court has little confidence in the testimony of Detective McNaughton on this issue.*

(Emphasis added.) The trial court further did not believe McNaughton's attempt to justify his prior illegal entry as a protective sweep. The trial court stated that there was "nothing in the testimony or documents that would suggest ... a 'protective sweep'....

Rather, the conclusion was reached as an attempt to justify the search after it was called into question." Thus, the trial court found both McNaughton's failure to inform the magistrate of the prior illegal entry, as well as his attempt to justify, after-the-fact, the prior illegal entry and search at the suppression hearing, to be indicative of McNaughton's lack of credibility. The trial court disbelieved McNaughton's assurances that the prior illegal entry did not motivate him to seek the warrant. In light of McNaughton's conduct, the trial court did not exceed its permitted range of discretion in disbelieving his testimony nor was the trial court's conclusion that the prior illegal entry was the motivation for seeking the warrant clearly erroneous.[2]

## CONCLUSION

¶ 17 Police officers are obligated to demonstrate candor when seeking search warrants and failure to reveal a prior illegal entry to a magistrate may legitimately call into question an officer's credibility. Furthermore, the trial court did not exceed its permitted range of discretion in disbelieving McNaughton's testimony, nor was the trial court's conclusion that the prior illegal entry motivated seeking the warrant clearly erroneous. Accordingly, we affirm the trial court's grant of Krukowski's motion to suppress.

¶ 18 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and JUDITH M. BILLINGS, Associate Presiding Judge.

---

2. We also conclude that *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), provides a separate and independent basis to affirm the trial court's decision. However, be-cause we affirm under *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), we do not address the State's arguments under *Franks.*