2003 UT App 37

**STATE of Utah, Plaintiff and Appellant,**

v.

**Tyler John ZESIGER, Defendant and Appellee.**

No. 20020058–CA.

Court of Appeals of Utah.

Feb. 13, 2003.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellant.

Walter F. Bugden and Tara L. Isaacson, Bugden & Isaacson, LLC, Salt Lake City, for Appellee.

Before JACKSON, P.J., BILLINGS, Associate Presiding Judge, and BENCH, J.

## OPINION

BENCH, Judge:

¶ 1 This is an interlocutory appeal by the State from an order suppressing evidence seized pursuant to a second search warrant. The trial court concluded that the taint on evidence obtained from an earlier search was not removed by the second warrant, and that the independent source rule "does not apply to violations of the 'knock and announce' statute." We reverse.

## BACKGROUND

¶ 2 During the course of an unrelated child pornography investigation, Detective Brad Franke of the Logan City Police Department received a message on his computer inviting him to enter a private File Transfer Protocol site that allowed access to files in another computer.[1] Franke entered the site and downloaded pictures and video clips depicting minors engaged in sexual activity. After further investigation by Detective James Nye of the Utah State University Police Department, the police determined that the files originated from Defendant's dormitory room,

"Snow Hall 306C." Nye then obtained a knock-and-announce search warrant authorizing the search of Defendant's dormitory room.

¶ 3 On December 13, 2001, Nye knocked on the front door of apartment 306 and announced, "this is the police department, we have a search warrant." After a few moments, one of Defendant's roommates opened the door and invited the officers inside. The front door of the apartment opened into a kitchen and small living room area. Down the hallway were three bedrooms, each of which were shared by two roommates. After determining which room was Defendant's, Nye opened the bedroom door without knocking. Before entering, Nye asked Defendant who he was and whether the room was his. After confirming Defendant's identity and occupancy of the room, the officers seized his computer and performed a search of the room. During the search, Defendant acknowledged that he operated the Internet site. The computer was then taken to the Attorney General's office to compare the contents on the computer with those files previously downloaded by Detective Franke. All of the files previously downloaded were found on Defendant's computer. Defendant was then charged with ten counts of sexual exploitation of a minor in violation of Utah Code Ann. § 76-5a-3 (1999).

¶ 4 Defendant filed a motion to suppress the evidence, arguing that the police failed to meet the requirements of the knock-and-announce warrant. The trial court agreed and suppressed the computer evidence and Defendant's statements made during the execution of the first search warrant because the police failed to knock and announce their presence at Defendant's bedroom door.[2]

---

1. A File Transfer Protocol site (FTP) is a method for giving access to specific files and areas of a computer to another person via the Internet.

2. The State conceded to Defendant's motion, agreeing that the officers' conduct violated the knock-and-announce statute. We analyze this case consistent with that concession. We note, however, that case law from other jurisdictions suggests that the requirements for a knock-and-announce warrant may be met by knocking on the outside door of a dwelling without knocking on the inner door. *See People v. Mays*, 67 Cal.

App.4th 969, 79 Cal.Rptr.2d 519 (Cal.Ct.App. 1998) (holding that the officer's compliance with the knock-notice requirements at the front door of the residence was sufficient to enter the defendant's closed bedroom door and, therefore, a second knock-notice was unnecessary); *People v. Livermore*, 30 Cal.App.3d 1073, 106 Cal.Rptr. 822 (Cal.Ct.App.1973) (holding that, having complied with the knock-and-announce rule before entering a house, officers did not need to knock again before entering a bedroom); *People v. Woods*, 308 Ill.App.3d 930, 242 Ill.Dec. 507, 721 N.E.2d 786 (2000) (upholding a conviction where

¶ 5 Following entry of the suppression order, Nye arranged to return the computer to Defendant at his residence. During the interim period, Nye had obtained a second search warrant based solely on the presearch investigation and advised the issuing magistrate of the prior suppression order. Immediately after officers returned the computer to Defendant at his residence, they executed the second search warrant and reseized the computer.

¶ 6 Defendant filed a motion to suppress the evidence seized during the execution of the second warrant. The State argued that the independent source doctrine applied, and therefore, the evidence was admissible and did not have any illegal taint. The trial court disagreed, however, and ruled that the independent source doctrine did not apply in this case because "the illegal taint on the evidence was not removed by the subsequent service of the Second Search Warrant." The trial court concluded that the independent source doctrine does not apply to violations of the knock-and-announce statute. We granted the State's petition for permission to appeal from an interlocutory order. *See* Utah R.App. P. 5.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 7 The State argues that the "trial court should not have suppressed the computer evidence obtained pursuant to the second search warrant." The State alleges that the trial court erred in rejecting the independent source doctrine by concluding that it did not apply in cases involving violations of the knock-and-announce statute. We review "[t]he factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence ... under the deferential clearly-erroneous standard, and the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno,* 910 P.2d 1245, 1247 (Utah Ct.App.1996) (citing *State v. Pena,* 869 P.2d 932, 935–40 (Utah 1994)).

police failed to knock on the door of the defendant's apartment after knocking on the outer

## ANALYSIS

■ ¶ 8 The State argues that "the computer seized pursuant to the second search warrant is admissible under the independent source doctrine." In *Murray v. United States,* 487 U.S. 533, 536–40, 108 S.Ct. 2529, 2532–34, 101 L.Ed.2d 472 (1988) the Supreme Court explained and applied the independent source doctrine. The Court upheld a subsequent search and seizure after law enforcement officials had previously entered a warehouse illegally. During the illegal entry, agents saw a large number of wrapped bales that they thought contained marijuana. Following this entry, law enforcement agents sought and obtained a search warrant. *See Murray,* 487 U.S. at 535–36, 108 S.Ct. at 2532. After obtaining the warrant, agents searched the warehouse and "seized 270 bales of marijuana." *Id.* at 536, 108 S.Ct. at 2532. The Supreme Court determined that the independent source doctrine allowed evidence from the subsequent seizure after the illegal entry if the State could demonstrate that "no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Id.* at 540, 108 S.Ct. at 2534. Accordingly, when the illegal entry and the information gained from it do not affect either the State's decision to seek a warrant or the magistrate's decision to grant one, "then the evidence need not be suppressed despite the fact that it was initially unlawfully obtained." *United States v. May,* 214 F.3d 900, 906 (7th Cir.2000).

¶ 9 In the present case, the trial court never found that the State failed to meet the requirements of the independent source doctrine. In fact, the defense stipulated that the requirements for the independent source doctrine were met. Defendant's brief states that the second warrant was "independent of any illegally gained information." Additionally, at oral argument before this court, Defendant's counsel stipulated that the requirements for the independent source doctrine found in *Murray* were met. *See Murray,* 487 U.S. at 536–40, 108 S.Ct. at 2532–34.

door of the apartment building).

¶ 10 Instead of questioning the validity of the independent source doctrine as to the second warrant, the trial court concluded that the independent source doctrine categorically "does not apply to violations of the 'knock and announce' statute." The court reasoned that to rule otherwise would render the knock-and-announce statute meaningless since illegal entry could simply be remedied by a subsequent entry and the "illegal taint on the evidence was not removed by the subsequent service of the Second Search Warrant." Before this court, Defendant argues that the independent source doctrine cannot apply where there is a violation of a knock-and-announce warrant. We disagree.

■ ¶ 11 Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). The exclusionary rule "also prohibits the introduction of derivative evidence ... that is the product of ... or that is otherwise acquired as an indirect result of the unlawful search." *Murray*, 487 U.S. at 536–37, 108 S.Ct. at 2533. However, "[a]lmost simultaneously with [the] development of the exclusionary rule, in the first quarter of this century, [the Supreme Court] also announced what has come to be known as the 'independent source' doctrine." *Id.* at 537, 108 S.Ct. at 2533. This doctrine has been described as

> "[t]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation."

*Id.* (quoting *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)) (alterations in original).

■ ¶ 12 "[T]he 'knock and announce' rule ... safeguards Fourth Amendment rights, [by] protecting citizens from violations through the misconduct of police officers." *United States v. Marts*, 986 F.2d 1216, 1217 (8th Cir.1993). The Utah Supreme Court has stated that

> [t]he basic interests that support the knock-and-announce requirement are (1) the protection of an individual's private activities within his home, (2) the prevention of violence and physical injury to both police and occupants which may result from an unannounced police entry, and (3) the prevention of property damage resulting from forced entry.

*State v. Buck*, 756 P.2d 700, 701 (Utah 1988). The knock-and-announce protections and interests are limited, however, because " 'in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes.' " *State v. Arroyo*, 796 P.2d 684, 688 (Utah 1990) (quoting *Brown v. Illinois*, 422 U.S. 590, 608–09, 95 S.Ct. 2254, 2264, 45 L.Ed.2d 416 (1975)).

■ ¶ 13 The trial court cited to no cases that explicitly reject the application of the independent source doctrine to knock-and-announce violations. Defendant relies upon *Marts* arguing that "other jurisdictions have explicitly rejected the application of the independent source doctrine in knock-and-announce violation cases involving one search." Defendant's reliance on this case is misplaced. The *Marts* court discussed the use of the independent source rule in knock-and-announce violations, responding to the reasoning in a dissent. *See* 986 F.2d at 1220. However, the issue of whether the independent source rule applied to the case was not specifically decided because "[a] case should not be reversed on appeal on a ground not raised in the district court or in this court." *Id.* at 1219.

■ ¶ 14 Furthermore, the independent source doctrine does not render the safeguards of the Fourth Amendment meaningless as the State must demonstrate "no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's deci-

sion to grant it." *Murray*, 487 U.S. at 540, 108 S.Ct. at 2534. These requirements help insure that any illegal taint on evidence wrongfully seized is removed before reseizure. In the case before us, Defendant's Fourth Amendment rights were protected by the independent source requirements for obtaining a second search warrant. Any taint on the evidence from the first illegal search was cured by the fact that the State did not use any information gained from the illegal search in its affidavit for the second search warrant.

¶ 15 Next, Defendant argues that even if the independent source doctrine can apply to knock-and-announce warrant violations, it should not apply to this case because the police actually seized evidence. Defendant attempts to draw a distinction between knock-and-announce violations involving seized and unseized evidence, stating that "if a knock-and-announce violation occurs, and evidence is *not* seized, and an independent and lawful search takes place, the doctrine may apply." Defendant cites to part of the Supreme Court's opinion in *Murray* arguing that the "United States Supreme Court has held that application of the doctrine is warranted when the government has made an unlawful entry, but has not seized evidence until a search warrant is obtained." The Supreme Court, however, does not make this distinction. In *Murray*, the Supreme Court states:

> The First Circuit has discerned a difference between tangible and intangible evidence that has been tainted, in that objects "once seized cannot be cleanly reseized without returning the objects to private control." It seems to us, however, that reseizure of tangible evidence already seized is no more impossible than rediscovery of intangible evidence already discovered. *The independent source doctrine does not rest upon such metaphysical analysis,* but upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an ear-

lier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply.

487 U.S. at 541–42, 108 S.Ct. at 2535 (citation omitted) (emphasis added). Accordingly, we disagree with Defendant's argument and conclude that the independent source doctrine can apply in situations involving a knock-and-announce violation where evidence was seized.

¶ 16 Finally, Defendant suggests that the use of a different judge by the police in obtaining the second warrant should be dispositive. We disagree. The police did use a different judge in obtaining the second warrant. However, the police explicitly stated in the affidavit that the evidence obtained in the execution of the first warrant had been suppressed. Any possible duty of candor the police had in obtaining the second warrant was clearly met in this case. *See State v. Krukowski*, 2002 UT App 433, ¶¶ 12–14, 62 P.3d 452.

## CONCLUSION

¶ 17 Based on the foregoing, we conclude the trial court erred by ruling that the independent source doctrine does not apply to knock-and-announce violations. Furthermore, we conclude that the independent source doctrine can apply to violations of the knock-and-announce rule where evidence is seized.

¶ 18 We therefore reverse and remand the case for further proceedings consistent with our opinion.

¶ 19 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JUDITH M. BILLINGS, Associate Presiding Judge.