2003 UT App 389

**STATE of Utah, Plaintiff and Appellee,**

v.

**Laura DABLE, Defendant and Appellant.**

**No. 20020096–CA.**

Court of Appeals of Utah.

Nov. 14, 2003.

A.W. Lauritzen, Logan, for Appellant.

Mark L. Shurtleff, Attorney General and Brett J. Delporto, Assistant Attorney General, Salt Lake City, for Appellee.

Before DAVIS, GREENWOOD, and THORNE, JJ.

OPINION (For Official Publication)

DAVIS, Judge:

¶ 1 Laura Dable appeals the trial court's denial of her motion to suppress evidence on the grounds that the search warrant affidavit failed to establish probable cause. We reverse.

## BACKGROUND

¶ 2 Sheriff's deputies from Lincoln County, Wyoming (Wyoming Deputies) received a tip from a confidential informant (Wyoming Informant) that Laura Dable was buying methamphetamine in Ogden, Utah to sell in Lincoln County, Wyoming. Acting on this tip and believing that Dable's vehicle traveled in excess of the speed limit, Wyoming Deputies executed a traffic stop of Dable. During a roadside search of the vehicle, they discovered methamphetamine. Dable admitted in her postarrest statements that she purchased the methamphetamine in Ogden, drove to her residence in Randolph, Rich County, Utah, and remained at her residence for a few hours before traveling to Lincoln County. Wyoming Deputies then gave that information to sheriff's deputies in Rich County, Utah (Utah Deputies).

¶ 3 Utah Deputies then determined to seek a nighttime, no-knock search warrant to search Dable's residence in Randolph for ille-

gal drugs using pre-printed forms for both the affidavit and the warrant. Utah Deputies stated in the affidavit that probable cause to search Dable's residence existed because (1) Wyoming Deputies arrested Dable for possession of methamphetamine; (2) Dable stopped at her home for a few hours after purchasing the methamphetamine; and (3) Threll Orton (Utah Informant) stated that he had purchased methamphetamine from Laura Dable on "at least two occasions." The affidavit omitted information known to Utah Deputies about Utah Informant's arrest and criminal activities, the date that information about his arrest and criminal activities was obtained from Utah Informant, and left entirely blank the sections that would justify a nighttime, no-knock search.[1] Upon execution of the search warrant, police officers seized methamphetamine, marijuana, and drug paraphernalia. Defendant filed a motion to suppress the evidence seized from her residence on the ground that the affidavit failed to establish probable cause. Relying upon the details in the affidavit provided by Wyoming Deputies to Utah Deputies, the trial court denied Dable's motion. Dable subsequently entered a conditional guilty plea to two counts of possession or use of a controlled substance in violation of Utah Code Annotated section 58-37-8(2)(a)(i), (2)(b)(ii) (2002 & Supp.2003), a third degree felony, and Utah Code Annotated section 58-37-8(2)(e) (2002), a class B misdemeanor. Under *State v. Sery*, 758 P.2d 935 (Utah Ct.App.1988), Dable appeals the trial court's denial of her motion to suppress.

## ISSUE AND STANDARD OF REVIEW

 ¶4 The issue we consider on appeal is whether the search warrant was supported by probable cause. "Upon appellate review, we examine the search warrant affidavit 'in its entirety and in a common-sense fashion,' deferring to the magistrate's decision on whether the search warrant is supported by

probable cause." *State v. Purser*, 828 P.2d 515, 517 (Utah Ct.App.1992) (citation omitted).

"[T]his court, like the reviewing court below, is bound by the contents of the affidavit, we therefore need not defer to the trial court's finding. . . ." Instead, " 'we make an independent review of the trial court's determination of the sufficiency of the written evidence.' " "However, 'the [F]ourth [A]mendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination[.] [I]nstead, it requires only that the reviewing court conclude "that the magistrate had a substantial basis for . . . [determining] that probable cause existed." ' " We therefore "pay great deference to the magistrate's determination."

*State v. Saddler*, 2003 UT App 82, ¶7, 67 P.3d 1025 (alterations in original) (citations omitted), *cert. granted*, 76 P.3d 691 (Utah 2003). Although the trial court focused upon information obtained from the Wyoming Deputies, we review the search warrant affidavit in its entirety.

## ANALYSIS

 ¶5 " 'Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched.' . . . In making a probable-cause determination, the issuing magistrate must examine the totality of the circumstances set forth in the affidavit, including an informant's veracity and basis of knowledge." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (citations omitted). The totality of the circumstances analysis provides a framework wherein a magistrate can "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be

---

1. Dable was probably not prejudiced by the nighttime, no-knock search warrant in this case because the search apparently occurred during daylight hours and when she was not home. *See Salt Lake City v. Trujillo*, 854 P.2d 603, 609 (Utah Ct.App.1993) (holding no prejudice by nighttime authorization of search warrant when search

conducted during daylight). However, the fact that the magistrate authorized a nighttime, no-knock search warrant without *any* information in the affidavit supporting such a warrant, speaks volumes about the level of scrutiny given the affidavit.

found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

¶ 6 Furthermore, in Utah, when an informant is relied upon, "an analysis of the totality of the circumstances requires us to consider the three factors articulated by this court in *Kaysville City v. Mulcahy,* 943 P.2d 231, 235–36 (Utah Ct.App.1997)[,]" *State v. Saddler,* 2003 UT App 82, ¶ 10, 67 P.3d 1025 (quotations and citations omitted), *cert. granted,* 76 P.3d 691 (Utah 2003), which are: (1) "the type of tip or informant[s] involved," *Mulcahy,* 943 P.2d at 235; (2) "whether the informant[s] gave enough detail about the observed criminal activity to support a [warrant]," *id.* at 236; and (3) whether police independently corroborated the informants' information. *See id.*

¶ 7 To establish probable cause in this case, police officers relied upon the Wyoming Deputies, and the Utah Informant, who, at the time the warrant was prepared, was under arrest for possession of methamphetamine.

¶ 8 We first examine the information provided by Wyoming Deputies. We presume the reliability of the information provided by Wyoming Deputies. *See State v. Nielsen,* 727 P.2d 188, 192 (Utah 1986) ("[T]here is a presumption that law enforcement officers will convey information to each other truthfully."). However, this information provides scant detail for a magistrate to determine that "there is a fair probability that contraband or evidence of a crime will be found in [Dable's residence]." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. While Dable admitted to the Wyoming Deputies that she stopped at her residence for a few hours after purchasing drugs in Ogden, Utah, this admission, even when combined with the other statements, provides no " 'nexus between suspected criminal activity and the place to be searched.' " *Danhauer,* 229 F.3d at 1006 (citation omitted). Although Wyoming Informant's information turned out to be correct, the fact that Dable stopped at her residence before traveling to Lincoln County, Wyoming is apropos of nothing. Without more, Dable's statement to the Wyoming Deputies that she stopped at home before traveling to Lincoln County fails to establish probable cause that drugs were located at her home at the time the warrant was issued. *See State v. Thurman,* 846 P.2d 1256, 1261 (Utah 1993) (upholding search warrant affidavit because, inter alia, it created a sufficient nexus between the defendant and the commission of a crime).

¶ 9 Thus, we turn our attention to an evaluation of the information provided by Utah Informant using the *Mulcahy* factors. *See* 943 P.2d at 235–36. Under the first *Mulcahy* factor, we examine "the type of tip or informant[s] involved." *Id.* at 235.

An informant's credibility is heightened when she provides detailed information based on personal observation, and when her statements are confirmed by police. By the same token, a police informant "who gains information through criminal activity or who is 'motivated . . . by pecuniary gain[,]' . . . is lower on the reliability scale than a citizen-informant."

*State v. McArthur,* 2000 UT App 23, ¶ 31, 996 P.2d 555 (alterations in original) (citations omitted). In this case, the Utah Informant gave his statements to Utah Deputies after his arrest for possession of methamphetamine and marijuana. His statement that he had purchased methamphetamine from Dable's trailer "on at least two occasions" was nonspecific and general in nature. Although Utah Informant provided information based on personal observation, he obtained this information through criminal activity, and we measure his credibility "lower on the reliability scale than a citizen-informant." *Id.* (quotations and citations omitted).

¶ 10 Additionally, the information regarding Utah Informant's arrest, as well as the date when he gave them the information, was omitted from the affidavit, depriving the magistrate of important information which might have assisted him in making an independent evaluation of the informant's credibility in this matter. "Police officers are obligated to demonstrate candor when seeking search warrants and failure to [fully disclose any conduct related to the search warrant request] to a magistrate may legiti-

mately call into question [the] officer[s'] credibility." *State v. Krukowski*, 2002 UT App 433, ¶ 17, 62 P.3d 452, *cert. granted*, 70 P.3d 919 (Utah 2003). This candor is required by the Fourth Amendment to the United States Constitution. *See Nielsen*, 727 P.2d at 190 ("[A] search must be authorized by a warrant issued 'upon probable cause, [and] supported by Oath or affirmation ....'" (second and third alterations in original) (citation omitted)). If a police officer omits material information from the search warrant affidavit, "the affidavit must be evaluated to determine if it will support a finding of probable cause when the omitted information is inserted.... [I]f the omission ... materially affects the finding of probable cause, any evidence obtained under the improperly issued warrant must be suppressed." *Id.* at 191.

¶ 11 An evaluation of the omitted information materially affects how we view the credibility of Utah Deputies and the reliability of Utah Informant and the information. The Utah Deputies obtained information from Utah Informant over a month before the warrant was issued and after his arrest for methamphetamine and marijuana possession, and they omitted mention of these facts from the search warrant affidavit. The omitted information undermines the reliability of Utah Informant, because one "'who gains information through criminal activity or who is "motivated ... by pecuniary gain[,]" ... is lower on the reliability scale than a citizen-informant.'" *McArthur*, 2000 UT App 23 at ¶ 31 (alterations in original). Without information of Utah Informant's arrest, the magistrate in this case could not "determine, independently, how, or if, the prior conduct impacts a probable cause determination." *Krukowski*, 2002 UT App 433 at ¶ 14. Thus, when assessing the totality of the circumstances in this matter, we are unable to accord the Utah Deputies full credibility or the Utah Informant any degree of reliability.

¶ 12 "'The second *Mulcahy* factor we must consider is whether "the informant[s] gave enough detail about the observed criminal activity to support a [warrant]."'" *State v. Saddler*, 2003 UT App 82, ¶ 20, 67 P.3d 1025 (second alteration in original) (citations omitted), *cert. granted*, 76 P.3d 691 (Utah 2003). The affidavit provides a "'bare bones'" sketch regarding Dable's criminal activity at her residence. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983). Utah Informant told Utah Deputies that he had purchased methamphetamine from Dable's residence on two occasions, without giving any information about the recency of the purchases. Without any mention of how recently Utah Informant purchased drugs from Dable's residence, there is no way to determine whether the information is stale. "The question that arises with staleness is whether 'so much time has elapsed that there is no longer probable cause to believe that the evidence is still at the targeted locale.'" *State v. Decorso*, 1999 UT 57, ¶ 60, 993 P.2d 837 (quoting *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993)). Also, as we have said, the record shows that Utah Informant made his statement over a month before Utah Deputies obtained the search warrant, thus bolstering the contention that Utah Deputies relied upon stale information.

¶ 13 However, "'"[w]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."'" *State v. Singleton*, 854 P.2d 1017, 1021 (Utah Ct.App.1993) (citations omitted). The information provided by Utah Informant fails to establish "activity of a protracted and continuous nature." *Id.* (quotations and citations omitted). In *Singleton*, the affidavit noted "facts indicating defendant was involved in continuous and ongoing criminal activity at defendant's residence." *Id.* The facts within the affidavit in *Singleton* noted that defendant had a substantial history of drug violations at her residence, police officers witnessed a known drug trafficker at defendant's residence, and police officers observed drug sales activity at the residence within one month of obtaining the search warrant. *See id.* In contrast, Utah Deputies in this case noted that Utah Informant had purchased methamphetamine from Dable's residence "on at least two occasions." Because the affidavit does not state when Utah Informant purchased the drugs and

does not illustrate continuous criminal activity at the residence, we have no way to determine if " 'so much time has elapsed that there is no longer probable cause to believe that the evidence is still at the targeted locale.'" *Decorso,* 1999 UT 57 at ¶ 60 (quoting *Thurman,* 846 P.2d at 1260).

¶ 14 Additionally, Utah Informant provided no information connecting the drugs purchased in Ogden, Utah, on June 6, 2000, to Dable's residence. *See United States v. Lalor,* 996 F.2d 1578, 1582–83 (4th Cir.1993) (ruling that probable cause to search defendant's residence was lacking where the affidavit failed to adequately explain the relationship between the defendant's residence and suspected drug activity). Based on the foregoing, we conclude that Utah Deputies provided a dearth of detail regarding any "observed criminal activity to support a [warrant]" for Dable's residence. *Saddler,* 2003 UT App 82 at ¶ 20 (alteration in original) (quotations and citations omitted).

■■■ ¶ 15 " 'The final *Mulcahy* factor is whether the police officer[s] independently confirm[ed] the informants' information.'" *Id.* at ¶ 22 (citations omitted). The affidavit reveals that the Utah Deputies confirmed only the existence and location of Dable's residence. "Corroboration 'means, in light of the circumstances, [the officer] confirms enough facts so that he may reasonably conclude that the information provided is reliable.'" *Id.* (alteration in original) (citation omitted). Without more, a nonspecific, general statement from Utah Informant cannot support a probable cause determination that Dable would have drugs at her residence. Due to the lower reliability and veracity accorded to Utah Informant, more corroboration from the Utah Deputies was necessary.

¶ 16 Examining the *Mulcahy* factors, *see Kaysville City v. Mulcahy,* 943 P.2d 231, 235–36 (Utah Ct.App.1997), under a totality of the circumstances analysis, we conclude that the affidavit failed to establish probable cause that Dable possessed drugs within her residence. The information creating the only nexus between Dable's residence and drugs comes from Utah Informant, and we accord this information low reliability and credibility due to Utah Informant's arrest, and the con-

cealment of the arrest and age of the information from the magistrate by Utah Deputies. While not fatal to the analysis, *see Saddler,* 2003 UT App 82 at ¶ 19 ("[A]n informant's veracity and reliability may be ' "boosted by the detail with which the informant described his personal observation" ' of the [crime].'" (citation omitted) (final alteration in original)), the nonspecific, general statements of observed criminal activity at Dable's residence, and the failure of Utah Deputies to corroborate Utah Informant's information, lead us to conclude that under the totality of the circumstances, the affidavit failed to establish probable cause of illegal activity within Dable's residence.

## CONCLUSION

¶ 17 Under the totality of the circumstances, we conclude that the affidavit failed to establish probable cause that illegal drugs were located in Dable's residence when the search warrant was issued. "Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress the seized evidence. 'Since an error amounting to a violation of the federal constitution requires reversal unless it is harmless beyond a reasonable doubt, we reverse [Dable's] conviction[].'" *State v. Saddler,* 2003 UT App 82, ¶ 27, 67 P.3d 1025 (final alteration in original) (quoting *State v. Droneburg,* 781 P.2d 1303, 1306 (Utah Ct.App.1989)), *cert. granted,* 76 P.3d 691 (Utah 2003).

¶ 18 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.