821 A.2d 922

**STATE of Maryland**

v.

**Kai Ruchell LEE.**

**No. 81, Sept. Term, 2001.**

Court of Appeals of Maryland.

April 23, 2003.

276

Rachel Marblestone Kamins. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BELL, C.J.

The sole issue, which the State of Maryland, the petitioner, raises in this Court is whether evidence seized pursuant to a warrant, executed without knocking and announcing the police presence prior to forcing the door to the premises, is admissible pursuant to the inevitable discovery exception to the exclusionary rule. The Circuit Court for Harford County denied the motion to suppress, filed by the respondent, Kai Ruchell Lee, ruling that the possibility of the destruction of the cocaine recovered was an exigent circumstance that justified the unannounced entry. The Court of Special Appeals reversed. *Lee v. State*, 139 Md.App. 79, 774 A.2d 1183 (2001). It held that the failure to knock and announce, without justification, rendered the entry, albeit with a valid warrant, unreasonable and requires exclusion of the evidence seized. *Id.* at 94, 774 A.2d at 1192. Application of the doctrine of inevitable discovery under the circumstances of this case, the intermediate appellate court concluded in response to the State's motion for reconsideration, "would render the knock-and-announce provision of the Fourth Amendment meaningless." *Id.* We granted the writ of certiorari at the petitioner's request and, for the reasons that follow, we shall affirm the judgment of the intermediate appellate court.

## I.

During the month of August, 1998, the respondent made two separate sales of cocaine to a confidential informant, acting at the direction of the Baltimore County Police. After subsequent police surveillance, a warrant to search the respondent's home in Harford County was obtained from a District Court judge. The warrant did not contain a "no-knock clause;" authorizing entry, even by force, without first knocking and announcing police presence.[1]

The Court of Special Appeals described the search as follows:

"Early on a weekday morning late in September 1998, a large combined task force of law enforcement officers from the Baltimore County Police Department, the Harford County Sheriff's Office, the Harford County Police Department, and the Maryland State Police, assembled in front of a single-family, colonial style home in a residential area of Harford County. The task force, which arrived in several cars and trucks, surrounded the home, while eight Harford County deputy sheriffs, wearing black hoods and fatigue style uniforms, battered down the door of Lee's home with a two handled 'ram,' which is essentially a pipe filled with concrete. Once inside, the task force 'secured the premises' by dispersing throughout the house. Task force officers handcuffed two adults found upstairs in the master bedroom, gathered three small children from other bedrooms, and then herded all five members of the household together in the downstairs family room. The task force leader, a Maryland State Police trooper, and the Harford County deputy sheriffs then summonsed the remaining task force officers to enter and search the entire house."

*Lee*, 139 Md.App. at 81–82, 774 A.2d at 1185. Seized in the search were a clear plastic bag containing 26 grams of co-

---

1. Whether Maryland permits the issuance of "no-knock" warrants has not been questioned and, thus, is not an issue in the instant case.

caine [2]; four smaller baggies containing a total of 6.6 grams of cocaine; $1,369 dollars in U.S. currency; a rental agreement; and a 1986 white Chevy Astro Van. The respondent, who acknowledged that the cocaine seized was his, was arrested and charged with possession with the intent to distribute a controlled dangerous substance.

Before trial, the respondent moved to suppress the evidence seized during the search. He asserted that the search was invalid because the task force, lacking a reasonable suspicion to believe exigent circumstances existed to permit its doing so, failed to knock and announce its presence before entering his home. The motion was denied by the Circuit Court for Harford County. The court reasoned:

> "[The police] make a determination that they are going to enter without first knocking. They make that determination based on the hand-to-hand buys that were known.... They make that determination based on the ease with which evidence may be destroyed. They make that determination on the basis of the fact that they had a reasonable expectation they would find cocaine in that location and that Mr. Lee was known to them.

*　　*　　*　　*　　*　　*

> "So when I look at the fact that they arrived there, [the officer] brings the warrant, they have a discussion about what they are going to do and they make a decision, at that time, based on those factors, that they are going to enter without first knocking and the reason is ... because of the ease with which the evidence could be destroyed. When I look at the totality of the circumstances in this case I have no reason to doubt that that was a tactical decision they

---

.2. According to the Maryland State Police Property Record, the weight of the cocaine was 29.1 grams. On the other hand, the Property Received As Evidence By Circuit Court For Harford County indicates the weight of the cocaine to be 26 grams. We shall use the evidence amount.

made and based on the totality of the circumstances it was an appropriate one."

The respondent noted an appeal of that judgment to the Court of Special Appeals, which, as we have seen, reversed. The intermediate appellate court held that the failure of the police to knock and announce their presence prior to entering the respondent's residence was not justified by exigent circumstances:

"It is clear that, although Maryland law and the opinions of the Supreme Court of the United States presumptively require knocking and announcing before entry when searching with a proper warrant, the law also forgives the failure to do so when there are legally sufficient exigent circumstances. It is equally clear that there is no blanket or *per se* exception for drug searches. Rather, in each case, the police must articulate a reasonable suspicion, based upon, particularized facts, that exigent circumstances exists which justify not knocking and announcing.

$$* \quad * \quad * \quad * \quad * \quad *$$

"At the suppression hearing, the only witnesses to testify were two Maryland State Police troopers called by the State, one of whom testified primarily about having taken a statement from the appellant and not about the conduct of the search. The other trooper, who led the task force, candidly admitted that the only reason he had for not knocking and announcing was that this was a cocaine case, and he always battered down the doors in cases where the object to be seized was narcotics, such as cocaine, that could be easily 'flushed down the toilet.' The trooper testified that the only exceptions would occur, hypothetically, if the quantity of drugs exceeded the occupant's ability to dispose of them, or the occupants were not at home. The State was unable to elicit from the task force leader any particularized evidence about Lee, Lee's home, or anything else that would qualify as exigent circumstances, as contemplated by *Wil-*

*son*[3] and *Richards.*" [4]

*Lee,* at 89–90, 774 A.2d at 1189–90.

The State filed a motion for reconsideration, asking the court to address whether exclusion of the evidence was required in view of the inevitable discovery doctrine, arguing that, in any event, it would have been discovered inevitably pursuant to the validly issued search warrant. Although the Court of Special Appeals granted the motion for reconsideration, it rejected the inevitable discovery argument. That exception should not be applied in the case *sub judice,* the intermediate appellate court opined, because:

> "To apply the inevitable discovery exception to the exclusionary rule in this instance would render the knock-and-announce provision of the Fourth Amendment meaningless. The application of inevitable discovery in such cases negates the rule against per se exceptions to the knock-and-announce requirement. The United States Supreme Court has twice unanimously affirmed the requirement to knock and announce. In light of two rulings from the nation's highest court, finding this requirement to exist in both our common law and the Constitution, it would be wrong and utterly inconsistent for Maryland, in effect, to expunge this requirement and establish such an exception as was created in Michigan,[5] by attaching the doctrine of inevitable discovery to violations of the well established knock-and-announce requirement."

*Id.* at 94, 774 A.2d at 1192.

We granted the State's Petition for Writ of Certiorari, *State v. Lee,* 366 Md. 246, 783 A.2d 221 (2001), to address this case of first impression. In its petition, the State did not challenge the determination by the intermediate appellate court that

---

**3.** *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

**4.** *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

**5.** *See People v. Stevens,* 460 Mich. 626, 597 N.W.2d 53, 56 (1999).

there were no exigent circumstances at the time of the unannounced entry. Thus, we will address only whether the doctrine of inevitable discovery applies under the facts of this case. Stated differently, all we shall decide is the correctness of the Court of Special Appeals' holding that the evidence seized should have been suppressed.

II.

A. The Knock and Announce Rule

■ It is well settled in Maryland, and long has been so, that a police officer executing a search warrant "must give proper notice of his purpose and authority and be denied admittance before he can use force to break and enter" the premises to be searched. *Henson v. State,* 236 Md. 518, 521–22, 204 A.2d 516, 518–19 (1964); *Goodman v. State,* 178 Md. 1, 8, 11 A.2d 635, 639 (1940) ("A demand is necessary prior to the breaking in of the doors only where some person is found in charge of the building to be searched."); *Frankel v. State,* 178 Md. 553, 561, 16 A.2d 93, 97 (1940) (citing *Cornelius on Search and Seizure,* 2nd Ed., sec. 218, for "the rule that an officer, in executing a warrant to enter a house, which warrant is valid on its face, may break open the doors if denied admittance, but a demand is necessary prior to breaking doors when the premises are in charge of someone"). In *Henson,* the appellant argued, *inter alia,* "that the police officers who executed the search warrant broke open the door of the house being searched without first announcing who they were and making demand that entry be granted, and that this was illegal and vitiated all that followed." 236 Md. at 520, 204 A.2d at 518. Characterizing the claim as the extension of "the old rule," *id.* at 521, 204 A.2d at 518, and one "of long standing," *id.* at 522, 204 A.2d at 519, which has been codified in federal law and a number of the states, *id.,* citing *Miller v. United States,* 357 U.S. 301, 309 n. 8, 78 S.Ct. 1190, 1195 n. 8, 2 L.Ed.2d 1332, 1338 n. 8 (1958),[6] the Court stated the reasons underlying the

6. The federal statute, 18 U.S.C. § 3109, enacted in 1917, provides:

rule: "the law abhors unnecessary breaking or destruction of any house," *id.,* citing *Semayne's Case,* 77 Eng. Rep. 194 (K.B.1603)[7] and "the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property." *Id.,* citing *Launock v. Brown,* 106 Eng. Rep. 482 (K.B.1819).[8] The Court observed, however, that "the

---

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

7. The passage from *Semayne's Case,* 77 Eng. Rep. 194, 195–96 (K.B. 1603), in its entirety reads:

"In all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it he ought to signify the cause of his coming, and to make request to open doors ..., for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him; for perhaps he did not know of the process, of which, if he had notice, it is to be presumed that he would obey it."

Article 5 of the Maryland Declaration of Rights, as relevant, declares: "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State."

8. Judge Raker subsequently summarized the purpose of the knock and announce rule:

"The policy reasons underlying the announcement rule were to prevent sudden, unannounced invasions of the privacy of citizens, to prevent the needless destruction of property, and to safeguard the officer who might otherwise be killed by a 'fearful householder' unaware of the officer's identity or purpose."

Irma S. Raker, *The New "No Knock" Provision and its Effect on the Authority of the Police to Break and Enter,* 20 Am. U.L.Rev. 467, 469 (1970–71).

rule often has been made subject to qualifications and exceptions even in states with statutes, so that by judicial decision announcement and demand are not a requisite where the facts make it evident the officers' purpose is known or where they would frustrate the arrest, increase the peril of the arresting officer or permit the destruction of evidence." *Id.* For that proposition, it cited, among other authorities, *Miller,* 357 U.S. at 309, 78 S.Ct. at 1195, 2 L.Ed.2d at 1338.

The Court held that the entry by breaking and without warning in that case was "reasonable, permissible and legal and the evidence seized was admissible against the appellant." 236 Md. at 524, 204 A.2d at 520. Supporting that holding was the Court's conclusion that, "[p]racticalities and exigencies in searches for narcotics require the element of surprise entry, for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry," *id.* at 523, 204 A.2d at 519, and the testimony of the officer in charge of those executing the warrant, that his "experience in the past twelve years [has been] when you knock on a door when you suspect drugs being on the premises, they are often disposed of by flushing down the toilet or thrown out in some manner." *Id.* at 523, 204 A.2d at 519–520. As to the former, the Court quoted, with approval, Kaplan, *Search and Seizure, A No Man's Land in the Criminal Law,* 49 Cal. L.Rev. 474, 502 (1961):

"... it would seem that the perfection of small fire-arms and the development of indoor plumbing through which evidence can quickly be destroyed, have made [statutes requiring notice and entry before the use of force to enter] ... a dangerous anachronism. In many situations today ..., a rule requiring officers to forfeit the valuable element of surprise seems senseless and dangerous."

As *Henson* indicates, the Supreme Court of the United States has commented on the vintage of the knock and announce rule. *Wilson v. Arkansas,* 514 U.S. 927, 931–34, 115 S.Ct. 1914, 1916–18, 131 L.Ed.2d 976, 980–82 (1995); *Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828, 833 (1968); *Miller, supra,* 357 U.S. at 306–08, 78

S.Ct. at 1194, 2 L.Ed.2d at 1337–38. In *Miller,* after the Court traced the history of the rule, it concluded that "[t]he requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." 357 U.S. at 313, 78 S.Ct. at 1198, 2 L.Ed.2d at 1340. Although the entry in that case was "tested by criteria identical with those embodied in 18 U.S.C. § 3109," *id.* at 306, 78 S.Ct. at 1194, 2 L.Ed.2d at 1336, the *Miller* Court observed that Congress "codif[ied] a tradition embedded in Anglo–American law." *Id.* at 313, 78 S.Ct. at 1198, 2 L.Ed.2d at 1340. *See Wilson,* 514 U.S. at 933–34, 115 S.Ct. at 1917–18, 131 L.Ed.2d at 982; *Sabbath,* 391 U.S. at 591 n. 8, 88 S.Ct. at 1759 n. 8, 20 L.Ed.2d at 834 n. 8. In both *Miller* and *Sabbath,* the Court held inadmissible evidence obtained as a fruit of an arrest effected in violation of the knock and announce rule. In neither case was the remedy of exclusion of the evidence challenged.

■ Despite the vintage of the knock and announce rule and its deep roots in Anglo–American jurisprudence, it was not until *Wilson* that the Supreme Court "constitutionalized" the doctrine, by squarely holding that the knock and announce principle "is an element of the reasonableness inquiry under the Fourth Amendment." 514 U.S. at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982. In that case, the Supreme Court of Arkansas, having rejected the accused's argument that the knock and announce principle is required by the Fourth Amendment and "concluded that neither Arkansas law nor the Fourth Amendment required the suppression of the evidence," *id.* at 930, 115 S.Ct. at 1916, 131 L.Ed.2d at 980, affirmed the accused's drug convictions. The High Court reversed, holding:

> "Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer's unannounced entry

into a home might be unreasonable under the Fourth Amendment."

*Id.* at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982 It cautioned, however, that the "flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982. Indeed, the Court acknowledged that considerations of officer safety and the ease with which drugs may be destroyed "may well provide the necessary justification" for unannounced entries. *Id.* at 937, 115 S.Ct. at 1919, 131 L.Ed.2d at 984. Consequently, the Court characterized its opinion to "simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." *Id.* at 936, 115 S.Ct. at 1919, 131 L.Ed.2d at 984. Rather than "attempt a comprehensive catalog of the relevant countervailing factors," it left "to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at 936, 115 S.Ct. at 1919, 131 L.Ed.2d at 984.

That the High Court intended the determination of the factors that inform the reasonableness of an unannounced entry to be made on a case by case basis has subsequently been confirmed. In *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), that Court addressed whether a blanket exception to the knock and announce rule was permissible when police execute a search warrant in felony drug investigations. The Supreme Court of Wisconsin, concluding that *Wilson* did not preclude *per se* rules with respect to the knock and announce requirement, reaffirmed a pre-*Wilson* holding that police officers need never knock and announce their presence when executing a search warrant pursuant to a felony drug investigation. *Id.* at 387–88, 117 S.Ct. at 1418, 137 L.Ed.2d at 620. The High Court reversed. Although reiterating what was recognized in *Wilson,* "that the knock-and-announce requirement could give way 'under cir-

cumstances presenting a threat of physical violence' or 'where police officers have reason to believe that evidence would likely be destroyed if advance notice were given,' " *id.* at 391, 117 S.Ct. at 1420, 137 L.Ed.2d at 622, and characterizing as "indisputable" the fact that "felony drug investigations may frequently involve both of these circumstances," *id.* at 391, 117 S.Ct. at 1420, 137 L.Ed.2d at 622–23, the Court rejected the Wisconsin Supreme Court's rationale for adoption of the *per se* rule, identifying two "serious concerns":

"First, the exception contains considerable overgeneralization. For example, while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree. For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence. Or the police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by a no-knock entry. Wisconsin's blanket rule impermissibly insulates these cases from judicial review.

"A second difficulty with permitting a criminal-category exception to the knock-and-announce requirement is that the reasons for creating an exception in one category can, relatively easily, be applied to others. Armed bank robbers, for example are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a *per se* exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless."

*Id.* at 393–94, 117 S.Ct. at 1421, 137 L.Ed.2d at 623–24 (footnote omitted). The Court concluded:

> "Thus, the fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement."

*Id.* at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624. It held:

> "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries."

*Id.* at 394, 117 S.Ct. at 1421–22, 137 L.Ed.2d at 624.[9]

The issue this case presents, whether the inevitable discovery exception to the exclusionary rule, enunciated in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), renders evidence seized during a search conducted in violation of the knock and announce rule admissible was made to, but not decided by, the *Wilson* Court. Declining to address it and

---

9. *Henson v. State,* 236 Md. 518, 204 A.2d 516 (1964), discussed *supra,* in particular the discussion at 236 Md. at 523–25, 204 A.2d at 519–20, was identified by the Court in *Richards v. Wisconsin,* 520 U.S. 385, 390 n. 1, 117 S.Ct. 1416, 1420 n. 1, 137 L.Ed.2d 615, 622 n. 1 (1997), as a case predating *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) that concluded "that simple probable cause to search a home for narcotics always allows the police to forgo the knock-and-announce requirement." It follows that, to the extent that *Henson* sanctioned a *per se* rule in drug cases, it is no longer good law.

a companion argument based on the "independent source" doctrine, the Court explained:

"Respondent and its *amici* also ask us to affirm the denial of petitioner's suppression motion on an alternative ground: that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement. Analogizing to the 'independent source' doctrine applied in *Segura v. United States,* 468 U.S. 796, 805, 813–816, 82 L.Ed.2d 599, [608–09], 104 S.Ct. 3380, [3385–86] (1984), and the 'inevitable discovery' rule adopted in *Nix v. Williams,* 467 U.S. 431, 440–448, 81 L.Ed.2d 377, [385–90], 104 S.Ct. 2501[, 2507–11] (1984), respondent and its *amici* argue that any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. Because this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiorari, we decline to address these arguments."

*Wilson,* 514 U.S. at 937 n. 4, 115 S.Ct. at 1919 n. 4, 131 L.Ed.2d at 984 n. 4.

A different, but nevertheless similar, argument was presented to the Court, but rejected, in *Richards:*

"The State asserts that the intrusion on individual interests effectuated by a no-knock entry is minimal because the execution of the warrant itself constitutes the primary intrusion on individual privacy and that the individual privacy interest cannot outweigh the generalized governmental interest in effective and safe law enforcement. See also Brief for United States as *Amicus Curiae* 16 ('occupants' privacy interest is necessarily limited to the brief interval between the officers' announcement and their entry'). While it is true that a no-knock entry is less intrusive than, for example, a warrantless search, the individual interests implicated by an unannounced, forcible entry should not be unduly minimized. As we observed in *Wilson v. Arkansas,* 514 U.S. at 927, 930–932, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995),

the common law recognized that individuals should have an opportunity to themselves comply with the law and to avoid the destruction of property occasioned by a forcible entry. These interests are not inconsequential.

"Additionally, when police enter a residence without announcing their presence, the residents are not given any opportunity to prepare themselves for such an entry. The State pointed out at oral argument that, in Wisconsin, most search warrants are executed during the late night and early morning hours .... [t]he brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed."

520 U.S. at 393 n. 5, 117 S.Ct. at 1421 n. 5, 137 L.Ed.2d at 623 n. 5.

### B. Independent Source/Inevitable Discovery

▇▇▇▇ The State challenges the conclusion of the Court of Special Appeals that "[t]o apply the inevitable discovery exception to the exclusionary rule in this instance would render the knock-and-announce provision of the Fourth Amendment meaningless." *Lee,* 139 Md.App. at 94, 774 A.2d at 1192. In support of its position, it proffers two related reasons: "[t]he search warrant in this case served as an independent source for seizure of the cocaine in Lee's residence, rendering the seizure causally disconnected from the entry violation, and the cocaine inevitably would have been discovered pursuant to that warrant." (Petitioner's brief, at 6–7). In other words, the State relies on the "independent source" [10] and "inevitable

---

**10.** The respondent submits that, insofar as it is being advanced as a separate ground for reversal, the "independent source" theory is not preserved for our review, having been raised for the first time in the State's brief to this Court. The State submits to the contrary. Denying reliance on the theory as a separate matter, it argues, instead, that, under the facts of this case, where the warrant constituted the independent source by virtue of which the drugs inevitably would have been and, indeed, were discovered, notwithstanding the illegal entry, the two doctrines are inextricably intertwined. It relies on the close relationship between "independent source" and "inevitable discovery," citing

discovery" exceptions [11] to the exclusionary rule.

Having reviewed the prerequisites of the "independent source" and "inevitable discovery" doctrines, the State concludes that "[t]he inevitable discovery rule thus presents a

cases recognizing this to be so. *Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472, 481–82 (1988) ("inevitable discovery" rule "is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered"); *Miles v. State*, 365 Md. 488, 536, 781 A.2d 787, 815 (2001); *State v. Wagoner*, 130 N.M. 274, 24 P.3d 306, 310 (2001); *United States v. Leake*, 95 F.3d 409, 412 (6th Cir.1996); *United States v. Markling*, 7 F.3d 1309, 1318 n. 1 (7th Cir.1993).

Although not mentioned by name in its Petition for Certiorari, when the closeness of the interrelationship between the doctrines is taken into account, see *People v. Tate*, 323 Ill.App.3d 905, 257 Ill.Dec. 152, 753 N.E.2d 347, 352 (2001) (having rejected the "independent source" argument, noting "[t]he same reasoning defeats the State's inevitable discovery argument. The inevitable discovery doctrine is an extrapolation of the independent source doctrine"), and the substance of the arguments actually made are considered, we believe that the State is correct, the "independent source" argument has been preserved and, therefore, must be addressed on the merits. The question presented in the "cert" petition proceeded on two premises, that "the evidence seized was not the product of the failure to knock and announce and would inevitably have been discovered." This question is consistent with the question the State presented in its brief. The underlying premise of that question was that the evidence was seized pursuant to a valid search warrant and, thus, was not, for that reason, "the product of the failure to knock and announce, and would inevitably have been discovered." Moreover, the State argued in the "cert" petition that "[i]nasmuch as the warrant was independent of any illegal entry, the evidence discovered inevitably would have been found during the independent police search pursuant to a valid warrant."

11. Although the interrelationship between inevitable discovery and independent source is close, they are analytically distinct. As one court has observed:

"The inevitable discovery doctrine applies where evidence is not actually discovered by lawful means, but inevitably would have been. Its focus is on what would have happened if the illegal search had not aborted the lawful method of discovery. The independent source doctrine, however, applies when the evidence actually has been discovered by lawful means. Its focus is on what actually happened-was the discovery tainted by the illegal search?"

*United States v. Markling*, 7 F.3d 1309, 1318 n. 1 (7th Cir.1993). *See Williams v. State*, 372 Md. 386, 410–11, 813 A.2d 231, 245–46 (2002).

factual causation question: Would the evidence have been found, absent the illegal conduct?" Answering that question, it submits:

"Turning to the facts of this case, the warrant to search Lee's residence was premised on probable cause to believe that Lee was involved in the distribution of cocaine and that drugs and related paraphernalia would be discovered in his home. The police had a valid warrant that would have allowed them to thoroughly search Lee's residence, and any containers therein, and that search would have taken place regardless of whether the police first knocked and announced themselves at the door. What difference would those few seconds have made to the search? None. There is no question that the officers were going to enter. There is no question that the officers were going to search. There was no evidence that the occupants of the residence were poised to destroy the contraband in those few seconds that would have made the difference between compliance and noncompliance with the knock and announce rule.... Indeed, '[i]t is hard to understand how the discovery of evidence inside a house could be anything but "inevitable" once the police arrive with a warrant; an occupant would hardly be allowed to contend that, had the officers announced their presence and waited to enter, he would have had time to destroy the evidence.' *United States v. Jones,* 149 F.3d 715, 716–17 (7th Cir.1998)."

(Petitioner's brief, at 9–10) (Footnote omitted).

The State readily acknowledges that, "[n]umerous state and federal cases have declined to apply the inevitable discovery or independent source exceptions to the exclusionary rule to knock and announce violations." *Id.* at 11. It is not persuaded by those cases, characterizing them as proceeding "on the same misguided premise as the Court of Special Appeals[,] that to do so would render the knock and announce rule meaningless." *Id.* What those cases ignore, the State maintains, is that application of either or both of the doctrines to knock and announce cases does not vitiate the knock and announce rule; rather, "The rule stands; only the remedy

differs." *People v. Hoag,* 83 Cal.App.4th 1198, 1214, 100 Cal.Rptr.2d 556 (Cal.Ct.App.2000) (concurring opinion).

Not surprisingly, the State is more persuaded by those cases that, distinguishing the rule from the remedy, have applied the inevitable discovery doctrine to knock and announce violations, notably, in addition to the concurring opinion in *Hoag, supra, People v. Vasquez,* 461 Mich. 235, 602 N.W.2d 376, 379 (1999); *People v. Stevens,* 460 Mich. 626, 597 N.W.2d 53, 56 (1999); *Richardson v. State,* 787 So.2d 906, 910 (Fla.App.2001) (concurring opinion); *People v. Lamas,* 229 Cal.App.3d 560, 571, 282 Cal.Rptr. 296 (Cal.Ct.App.1991); *United States v. [Kip] Jones,* 214 F.3d 836, 838 (7th Cir.2000); *United States v. [Dennis] Jones,* 149 F.3d 715, 716–17 (7th Cir., 1998); *United States v. Hidalgo,* 747 F.Supp. 818, 832 (D.Mass.1990).[12]

*Stevens* is illustrative. There, the Supreme Court of Michigan, having determined that the police violated the knock and announce rule by their method of entry into the defendant's home to execute the validly issued search warrant-knocking and waiting only a few seconds before forcibly entering-and thus violated the Fourth amendment, addressed whether that violation required exclusion of the evidence seized. 597 N.W.2d at 55. Although acknowledging the pronouncements of the Supreme Court in *Wilson,* at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982 ("[I]n some circumstances, an officer's unannounced entry into a home [notwithstanding a valid warrant] might be unreasonable under the Fourth amendment.") and in *United States v. Ramirez,* 523 U.S. 65, 71, 118 S.Ct. 992, 996, 140 L.Ed.2d 191, 198 (1998) ("The general touchstone of reasonableness which governs Fourth Amendment analysis

---

12. Recently, the Court of Appeals of Utah held that the independent source doctrine could apply to knock and announce violations, *State v. Zesiger,* 2003 Ut.App. 37, at P17, 65 P.3d 314 (2003), noting, in the process, that the trial court, in categorically holding otherwise, cited no cases explicitly rejecting that application, *id.* at P13, 65 P.3d 314 and distinguishing *United States v. Marts,* 986 F.2d 1216 (8th Cir.1993), on which the trial court relied, on the basis that the issue was not specifically decided in that case. *Id.*

... governs the method of execution of the warrant."), *Stevens*, 597 N.W.2d at 58, and that "the exclusionary rule is sometimes needed to deter police from violations of constitutional and statutory protections, even at a great cost to society," *id.* at 62, the Supreme Court of Michigan held that, in that case, "the evidence would have been discovered despite any police misconduct," *id.* at 62, and that "the inevitable discovery exception to the exclusionary rule should be available to the prosecution." *Id.*

As to the latter holding, the court reasoned, consistent with the *Nix* statement of the purpose of the exclusionary rule in the inevitable discovery context, *id.* at 61:

"Given that the evidence would have been inevitably discovered, allowing the evidence in does not put the prosecution in any better position than it would be in had the police adhered to the knock-and-announce requirement. However, excluding the evidence puts the prosecution in a worse position than it would have been in had there been no police misconduct."

*Id.* at 62.

The former holding is premised on a violation of the knock and announce rule having no effect on the validity or the execution of the warrant. As to that, the court opined that the knock and announce requirement "does not control the execution of a valid search warrant; rather, it only delays entry," *id.* at 63, one purpose of which "is to allow the occupants a 'brief opportunity ... to order [their] personal affairs before the [officers] enter.' " *Id.*, quoting *United States v. Kane*, 637 F.2d 974, 977 (3rd Cir.1981). Adopting the rationale, stated in dicta in *United States v. [Dennis] Jones*, 149 F.3d 715, 716–17 (7th Cir., 1998), i.e.,

"It is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant; an occupant would hardly be allowed to contend that, had the officers announced their

presence and waited longer to enter, he would have had time to destroy the evidence,"

*id.* at 64, the court explained:

"The officers were armed with a valid search warrant. Defendant does not argue that the officers' search exceeded the scope of that warrant. It was not the means of entry that led to the discovery of the evidence, but, rather, it was the authority of the search warrant that enabled the police to search and seize the contested evidence. Therefore, the searching and seizing of the evidence was independent of failure to comply with the 'knock and announce' statute.

"As in *Jones,* the discovery of the evidence in the present case was inevitable, regardless of the illegalities on the police officers' entry into defendant's home. One of the purposes of the statute is to allow a defendant a brief opportunity to put his personal affairs in order before the police enter his home. *United States v. Kane, supra* at 977. It is not meant to allow the defendant the time to destroy the evidence. In the present case, the police did not exceed the scope of the search warrant. Therefore, they would have discovered the contested evidence, unless the defendant had been afforded the opportunity to destroy the evidence. The timing of the police officers' entry into the home in no way affected the inevitability of the discovery of the evidence."

*Id.* In addition to *[Dennis] Jones, supra,* the court relied on *United States v. Stefonek,* 179 F.3d 1030 (7th Cir.1999). With respect to the appropriate sanction for the knock and announce violation, the court opined:

"There are both state and federal sanctions for such violations that serve as deterrents for police misconduct that are less severe than the exclusion of the evidence. Additionally, exclusion of the evidence will put the prosecution in a worse position than if the police misconduct had not occurred."

*Id.* at 64.

Critical to the State's argument, whether premised on inevitable discovery or independent source, is the presence of a

valid warrant, lawfully obtained, which is separate and distinct from its manner of execution, as well as the search itself. Armed with such a warrant, the argument, like the argument that carried the day in *Stevens*, proceeds on the premise that "where the police are in possession of a valid warrant, and yet are somehow deficient in the manner of announcing their entry as they execute the warrant, it is only their entry, not the search itself that suffers from a taint of unreasonableness. In essence, [the argument is] ... that, where the entry is unlawful or unreasonable, the remainder of the search is nonetheless lawful because it occurs pursuant to a ... lawfully obtained and valid warrant." *Stevens*, 597 N.W.2d at 69 (Cavanagh, J, dissenting).

 Generally, evidence obtained as a result of a search in violation of the Fourth Amendment is inadmissible.[13] The primary reason for excluding such evidence is to "curb improper police conduct, which it accomplishes by disallowing the use of the evidence illegally obtained." *Brown v. State*, 364 Md. 37, 44, 770 A.2d 679, 683 (2001) (Bell, C.J. dissenting). *See Nix v. Williams*, 467 U.S. 431, 442–43, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377, 386–87 (1984); *Mapp v. Ohio*, 367 U.S.

---

**13.** The prohibition of the exclusionary rule "extends as well to the indirect as the direct products" of unconstitutional conduct. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, 453 (1963). Thus, it does not matter whether that evidence is "primary evidence obtained as a direct result of an illegal search or seizure [or] evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984), citing *Weeks v. United States*, 232 U.S. 383[, 34 S.Ct. 341, 58 L.Ed. 652,] (1914) and quoting *Nardone v. United States*, 308 U.S. 338, 341[, 60 S.Ct. 266, 268, 84 L.Ed. 307, 311] (1939). *See Murray v. United States*, 487 U.S. 533, 536–37, 108 S.Ct. 2529[, 2532], 101 L.Ed.2d 472, [480](1988) (the exclusionary rule prohibits evidence "that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint'"); *Miles v. State*, 365 Md. 488, 539, 781 A.2d 787, 817 (2001) (applying the exclusionary rule analysis to evidence derived from an unlawful wiretap in determining that "the trial judge properly drew the line between the taint of the original illegality ... and found attenuation from the taint....").

643, 650, 81 S.Ct. 1684, 1689, 6 L.Ed.2d 1081, 1087 (1961); *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067, 1083 (1976); *One 1995 Corvette VIN No. 1G1YY22P585103433 v. Mayor and City Council of Baltimore*, 353 Md. 114, 128, 724 A.2d 680, 687 (1999) (acknowledging that the purpose of the exclusionary rule is to curb improper police conduct); *Potts v. State*, 300 Md. 567, 582, 479 A.2d 1335, 1343 (1984). On the other hand, although the State is not permitted to profit from its illegal activity, "neither should it be placed in a worse position than it would otherwise have occupied," *Murray*, 487 U.S. at 542, 108 S.Ct. at 2535, 101 L.Ed.2d at 483, when evidence, or knowledge of that evidence, is gained from an independent and lawful source, that evidence is admissible. *Id.* at 538, 108 S.Ct. at 2533-34, 101 L.Ed.2d at 481. *See also Segura*, 468 U.S. at 805, 104 S.Ct. at 3385, 82 L.Ed.2d at 609, in which the Court, quoting *Wong Sun*, 371 U.S. at 487, 83 S.Ct. at 417, 9 L.Ed.2d at 455, in turn quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920), reiterated that "the exclusionary rule has no application [where] the Government learned of the evidence 'from an independent source.'" Thus, if the State can show that the source of the evidence was "wholly independent of any constitutional violation," *Nix*, 467 U.S. at 443, 104 S.Ct. at 2508, 81 L.Ed.2d at 387, then that there was an illegal search that took place at some point during a criminal investigation will not render the evidence in question inadmissible. That was the case in *Segura*.

In *Segura*, having probable cause to believe that Segura and another were engaged in selling narcotics, the police arrested Segura. Taking him to his apartment, they knocked without announcing that they were police officers. When the door was opened, the police entered the apartment and conducted a limited security sweep for other persons, in the process of which drug paraphernalia was seen in plain view. The occupant of the apartment, Colon, was then arrested, but two of the police officers remained in the apartment awaiting the securing of a search warrant. The warrant was obtained 19

hours later; however, the information on the basis of which the warrant was issued was neither derived from, nor related to the initial police entry nor obtained during that entry, but, rather, "constituted an independent source for the discovery and seizure of the evidence . . . challenged." 468 U.S. at 814, 104 S.Ct. at 3390, 82 L.Ed.2d at 615. Executing the warrant, the police seized both the paraphernalia they had seen earlier and cocaine discovered during the later search. *Id.,* 468 U.S. at 799–801, 104 S.Ct. at 3383, 82 L.Ed.2d at 605–06. Finding no exigent circumstances justifying the initial warrantless, unannounced entry, the United States District Court for the Eastern District of New York concluded that the entry was illegal. It thus granted Segura's motion to suppress all of the evidence seized, the paraphernalia seen on the initial warrantless entry as well as the cocaine seized after the warrant was issued. *Id.* at 802, 104 S.Ct. at 3383–84, 82 L.Ed.2d at 606.

The Second Circuit affirmed that ruling with respect to the paraphernalia seized prior to the issuance of the warrant, holding that it was properly suppressed, but reversed with respect to the cocaine seized under the warrant. *Id.* at 802–803, 104 S.Ct. at 3384, 82 L.Ed.2d at 607. The former ruling, not having been challenged by the Government, was not before the Supreme Court. *Id.* at 802–03 n. 4, 104 S.Ct. at 3384 n. 4, 82 L.Ed.2d at 607 n. 4. With respect to the cocaine seized pursuant to the warrant, concluding that to do so would not weaken the deterrent effect of the exclusionary rule because "officers who enter illegally will recognize that whatever evidence they discover as a direct result of the entry may be suppressed . . . ," *id.* at 812, 104 S.Ct. at 3389, 82 L.Ed.2d at 613, the Court held that it was admissible. It reasoned that, as to that cocaine, "[w]hether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant under which that evidence was seized," *id.* at 813–14, 104 S.Ct. at 3390, 82 L.Ed.2d at 614, and that was because it "was discovered the day following the entry, during the search conducted under a valid warrant; it was the product of that

search, wholly unrelated to the prior entry." *Id.* at 814, 104 S.Ct. at 3390, 82 L.Ed.2d at 615.

*Murray, supra,* is factually similar. There, without a warrant and there being no exigent circumstances, federal agents illegally entered a warehouse, observing, as a result, bales of marijuana in plain view. 487 U.S. at 535, 108 S.Ct. at 2532, 101 L.Ed.2d at 479. They left without disturbing the evidence. Keeping the warehouse under surveillance, but without including the observations made during the illegal entry in the affidavit for the warrant, the agents obtained a warrant for the search of the warehouse. *Id.* at 536, 108 S.Ct. at 2532, 101 L.Ed.2d at 479. Therefore, eight hours after the initial warrantless entry, the agents reentered the warehouse and seized the bales of marijuana they had previously observed. *Id.* The Circuit Court of Appeals, assuming the initial entry to have been illegal, affirmed the District Court's denial of Murray's motion to suppress the marijuana and thus the rejection of the claim that the evidence seized pursuant to the warrant was tainted by the prior illegal entry. *Id.* Noting that "[s]o long as a later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply," *id.* at 542, 108 S.Ct. at 2535, 101 L.Ed.2d at 483, the Supreme Court vacated the judgment and remanded the case for further fact finding. *Id.* at 543–44, 108 S.Ct. at 2536, 101 L.Ed.2d at 484. In that regard, the court observed:

"The ultimate question, therefore, is whether the search pursuant to the warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry ... or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant."

*Id.* at 542, 108 S.Ct. at 2536, 101 L.Ed.2d at 483–84 (footnote omitted).

The identical argument as that made by the State has been rejected, as the State itself acknowledges, by the majority of the courts considering it in the knock and announce context.[14] *See United States v. Cantu,* 230 F.3d 148, 153 (5th Cir.2000); *United States v. Dice,* 200 F.3d 978, 984–85 (6th Cir.2000); *United States v. Bates,* 84 F.3d 790 (6th Cir.1996); *United States v. Marts,* 986 F.2d 1216, 1220 (8th Cir.1993); *United States v. Becker,* 23 F.3d 1537, 1541 (9th Cir.1994); *United States v. Shugart,* 889 F.Supp. 963, 973–75 (E.D.Tex.1995), aff'd. *United States v. Shugart,* 117 F.3d 838, 844 (5th Cir. 1997); *Mazepink v. State,* 336 Ark. 171, 987 S.W.2d 648, 657 (1999), *cert. denied sub nom. Arkansas v. Mazepink,* 528

---

**14.** This Court, in *Williams v. State,* 372 Md. 386, 813 A.2d 231 (2002), considered, "whether evidence seized from a motel room following an entry by police is admissible in evidence on the grounds that it was seized as a result of an independent source or that it inevitably would have been discovered." *Id.* at 394, 813 A.2d at 236. In that case, having arrested an individual, Berry, who was staying at a motor inn, the police decided to apply for a search warrant for Berry's room in the named motor inn. While the application was being prepared and pending issuance of the warrant, other officers went to the motel. They approached the subject rooms and knocked on the door, responding, "maintenance," to the inquiry as to who was there. When the occupant looked through the window, but did not open the door and instead was heard to run from the door, the officers kicked in the door and entered, in the process smelling marijuana and seeing marijuana, in plain view. They subsequently arrested the defendant and, while searching him found cocaine on his person, in his pajamas. The police did not search further until they executed the warrant, which was subsequently issued. The application for that warrant included the information learned from the warrantless entry. No issue of the violation of the knock and announce rule was alleged, simply that the seizures of evidence from the defendant's person and from motel rooms were illegal. *Id.* at 395–98, 813 A.2d at 236–38. The trial court, finding " 'the State has failed to demonstrate that there was sufficient information for probable cause and even if so found, no exigent circumstances existed that would justify an "impoundment" of the hotel rooms and its occupants without a warrant,' " *id.* at 398–99, 813 A.2d at 239, agreed and, thus, suppressed the evidence. Although affirming the exigency finding, the Court of Special Appeals nevertheless reversed, concluding that there was probable cause even without the tainted information and that the inevitable discovery doctrine applied. We reversed, pointing out that "[i]n the instant case, the independent source doctrine is inapplicable because the State has failed to identify any evidence that was seized pursuant to the search warrant." *Id.* at 414, 813 A.2d at 248.

U.S. 927, 120 S.Ct. 321, 145 L.Ed.2d 250 (1999); *State v. Taylor*, 135 Ohio App.3d 182, 733 N.E.2d 310, 312 (1999); *People v. Tate*, 323 Ill.App.3d 905, 257 Ill.Dec. 152, 753 N.E.2d 347, 352 (2001). *See also, District of Columbia v. Mancouso*, 778 A.2d 270, 275 n. 10 (D.C.2001); *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251, 257 (1993) (concurring opinion) (independent source doctrine should be strictly limited to a source which is "truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered").

In *Dice*, the court, characterizing it as an attempt "to recast evidence that is in fact the direct fruit of an unconstitutional search as indirect evidence from an independent source," and labeling it a misunderstanding of the doctrine, 200 F.3d at 985, emphatically rejected the independent source rule argument. It distinguished *Segura* and *Murray* as two search cases, in which the second search, conducted pursuant to a valid warrant, "was independent of the illegal initial search." The court emphasized that, in *Segura*, the Supreme Court did not alter the lower court's finding that the items seen during the initial illegal entry were inadmissible. *Id.*, citing *Segura*, 468 U.S. at 804, 104 S.Ct. at 3385, 82 L.Ed.2d at 608. By contrast, it explained:

"In this case, there was but one entry, and it was illegal. The officers seized the evidence in question directly following that illegal entry. Knock-and-announce caselaw in this circuit and others makes very clear that such evidence is inadmissible as the direct fruit of that search. *See, e.g.,* [*United States v.] Bates*, 84 F.3d [790,] 795 [ (6th Cir.1996) ]. This is so even if that entry would have otherwise been legal because it was made pursuant to a valid search warrant. Indeed, the knock-and-announce rule presupposes that the entry is for a valid purpose—it merely prescribes the method by which that entry should be made in order best to protect the interests of the private resident. In other words, a knock-and-announce violation deems a search illegal due to the unlawful method in which it was executed

even if the search were legal in its purpose and authority (as demonstrated by a valid warrant). The admissible evidence from cases such as *Segura* and [*United States v.*] *Moreno* [, 758 F.2d 425 (9th Cir.1985)] all arose from searches which had both a valid warrant (purpose) as well as a legal entry (method). Here, we only have the former."

*Id.* The court concluded:

"Finally, we reject the Government's position because it would completely emasculate the knock-and-announce rule. As stated *supra*, the requirement that officers reasonably wait is a crucial element of the knock-and-announce rule. To remove the exclusionary bar from this type of knock-and-announce violation whenever officers possess a valid warrant would in one swift move gut the constitution's regulation of how officers execute such warrants."

*Id.* at 986, 104 S.Ct. 3380.

A similar rationale was employed by the court in *Tate:*

"The requirement that the source be 'genuinely independent' and the product of a 'later, lawful seizure' cuts against the State's argument here that the valid search warrant triggers the independent source doctrine. That the information supporting the warrant was known before the illegal entry was made is irrelevant. The State cannot escape from the record here: that the otherwise valid search warrant was executed in violation of the fourth amendment. The violation is directly connected to the illegal entry. A contrary conclusion would render the 'knock and announce' requirement meaningless and allow the exception to swallow the rule. 'Given the longstanding common law endorsement of the practice of announcement', we conclude that independent source does not apply under these facts."

257 Ill.Dec. 152, 753 N.E.2d at 352, quoting respectively *Murray,* 487 U.S. at 542, 108 S.Ct. at 2535, 101 L.Ed.2d at 483 and *Wilson,* 514 U.S. at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982. That is also the reasoning of the 8th Circuit in *Marts.* Responding to the argument made by the dissent that the independent source doctrine was applicable to that case, the

court opined that such application would make the knock and announce rule meaningless: "an officer could obviate illegal entry in every instance simply by looking to the information used to obtain the warrant. Under the dissent's reasoning, officers, in executing a valid search warrant, could break in doors of private homes without sanction." 986 F.2d at 1220. The court concluded that, since the warrant in that case, although legally obtained, was executed in violation of the knock and announce rule and the independent source doctrine requires that the search warrant and the evidence seized pursuant to it be totally unrelated to the illegal entry, the execution of the warrant was directly related to the illegal entry. *Id.*

We are persuaded by this reasoning and, so, hold that the independent source doctrine does not render evidence seized in violation of the knock and announce rule admissible. To hold otherwise, we agree with the courts that have so concluded, would be to strike a fatal blow to the knock and announce rule.

In *Nix*, the Supreme Court of the United States adopted the inevitable discovery exception to the exclusionary rule, holding that "when . . . the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." 467 U.S. at 448, 104 S.Ct. at 2511, 81 L.Ed.2d at 390. In that case, the police violated the defendant's Sixth Amendment right to counsel and as a result found the body of the young girl that the defendant had kidnaped and killed. 467 U.S. at 435–37, 104 S.Ct. at 2504–05, 81 L.Ed.2d at 382–83. Following the reversal of his conviction for that misconduct, the defendant was retried, but this time the prosecution did not use the defendant's statements or offer evidence that the defendant had directed the police to the body, *id.* at 437, 104 S.Ct. at 2506, 81 L.Ed.2d at 383; instead, in order to "establish by a preponderance of the evidence that the [girl's body] ultimately or inevitably would have been discovered by lawful means," *id.* at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 387–88, it presented detailed testimony regarding

the search that had taken place, the team's search methods and the likelihood of what would have happened had searchers not been told the location of the body. *Id.* at 448–49, 104 S.Ct. at 2511–12, 81 L.Ed.2d at 390–91. On that evidence, the Court concluded that "it is clear that the search parties were approaching the actual location of the body, and we are satisfied ... that the volunteer search teams would have resumed the search had Williams not earlier led the police to the body and the body inevitably would have been found." *Id.* at 449–50, 104 S.Ct. at 2512, 81 L.Ed.2d at 391.

This Court has recognized "the existence of the inevitable discovery doctrine and its basic requirements," *Stokes v. State,* 289 Md. 155, 165, 423 A.2d 552, 557 (1980), decided four years before *Nix,* and applied it, *Oken v. State,* 327 Md. 628, 654–656, 612 A.2d 258, 270–71 (1992), most recently in *Williams v. State,* 372 Md. 386, 415–18, 813 A.2d 231, 248–51 (2002). In *Stokes,* we stated that the doctrine "permits the government to cleanse the fruit of poison by demonstrating that the evidence acquired through improper exploitation would have been discovered by law enforcement officials by utilization of legal means independent of the improper method employed," 289 Md. at 163, 423 A.2d at 556, citing 3 W. LaFave, *Search and Seizure* § 11.4 at 620–628; LaCount and Girese, *The "Inevitable Discovery" Rule, an Evolving Exception to the Constitutional Exclusionary Rule,* 40 Alb. L.Rev. 483 (1976); Maguire, *How to Unpoison the Fruit—the Fourth Amendment and the Exclusionary Rule,* 55 J.Crim. L.C. & P.S. 307, 313–321 (1964), and that to invoke it,

> " '[T]he prosecution must establish, first, that certain proper and predictable investigatory procedures would have been utilized in the case at bar, and second, that those procedures would have inevitably resulted in the discovery of the evidence in question.' "

*Id.,* quoting LaCount and Girese, *supra* at 491. We emphasized that to establish inevitable discovery required proof, instead of simply speculation:

" 'It is not enough to show that the evidence "might" or "could" have been otherwise obtained. Once the illegal act is shown to have been in fact the sole effective cause of the discovery of certain evidence, such evidence is inadmissible unless the prosecution severs the causal connection by an affirmative showing that it *would* have acquired the evidence in any event. In order to avoid the exclusionary rule, the government must establish that it *has not* benefitted by the illegal acts of its agents; a showing that it *might not* have so benefitted is insufficient.' "

*Id.* at 164, 423 A.2d at 557, quoting *Maguire, supra* at 315.

In *Oken,* we applied the inevitable discovery doctrine. 327 Md. at 654–56, 612 A.2d at 270–71. There, the trial court, having found that they would inevitably have been discovered, admitted into evidence the pair of tennis shoes the defendant was wearing at the time of his arrest, over the defendant's objection that they were seized as a result of information obtained during an illegal search of a room he had occupied while staying at an inn in Maine. That finding was based on testimony by the manager of the inn where the search occurred as to certain predictable and customary cleaning procedures at the inn that would have uncovered the evidence in Oken's room absent the initial illegal entry by the police. *Id.* at 654–55, 612 A.2d at 270–71. We concluded "that the State presented ample evidence demonstrating that the items in [Oken's room] would have been inevitably discovered through lawful means, and therefore the motion judge's ruling was not clearly erroneous." *Id.* at 655, 612 A.2d at 271.

We also applied the doctrine of inevitable discovery in *Williams.* There, police officers illegally entered Williams' motel room while another officer was obtaining a warrant, seizing marijuana and cocaine and arresting Williams. 372 Md. at 395–96, 813 A.2d at 236–37. While we affirmed the Court of Special Appeals' holding that, after excising the tainted information from the application for the warrant-the police had included their observations from the warrantless, illegal entry-there was probable cause for the search of the motel rooms, emphasizing the fact intensive nature of the

inevitable discovery inquiry and the need for proof rather than speculation, we concluded that the State had "not met its burden under the inevitable discovery doctrine." 372 Md. at 426–28, 813 A.2d at 255–56.

■ As is the case with the State's independent source argument, to which it is identical, essential to the State's inevitable discovery argument is the fact that the State had obtained a search warrant for the search of the respondent's premises and that the existence of the warrant and the manner of its execution, and in particular, the manner of gaining entry, be viewed and considered as separate and distinct. The argument proceeds: because the police had a valid warrant that could have been executed without a violation of the knock and announce rule, the evidence seized pursuant to its execution in violation of that rule "inevitably" would have been discovered; because the evidence could have been seized by properly executing the warrant, that it was not executed properly can not prevent its admission into evidence. So viewed, the State's argument would follow naturally and logically. That, as we have seen, is the thrust of *Stevens*, the leading case espousing the argument that the State proffers.

We are not persuaded. In fact, as we see it, there are at least two ways in which the application of the inevitable discovery rule to a knock and announce violation runs counter to established Supreme Court knock and announce jurisprudence. Having held that the manner of the police's entry into premises is a factor to be considered when assessing the reasonableness of a search and seizure and that an unannounced entry, under some circumstances, might be unreasonable, *Wilson*, 514 U.S. at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982, the *Wilson* court stated that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests," *id.*, thus requiring a "case-by-case evaluation of the manner in which a search was executed." *Richards*, 520 U.S. at 392, 117 S.Ct. at 1420, 137

L.Ed.2d at 623. Requiring a case by case evaluation of how a search was effected is the very antithesis of a *per se* rule.

In *Richards,* the Court considered just such a *per se* rule, a Wisconsin rule, pursuant to which there was a blanket exception for felony drug cases. The Court rejected the *per se* rule, instead reaffirming the requirement of a case-by-case reasonableness inquiry:

> "[I]n each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement."

*Id.* at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624. It reasoned:

> "If a *per se* exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless."

*Id.*

To apply the inevitable discovery rule, on the *Stevens* rationale, whenever there is a valid warrant, to render admissible, any evidence seized in execution of that warrant in violation of the knock and announce rule is, in effect, to create a blanket exception to that rule for all cases involving valid search warrants, *see Vasquez,* 602 N.W.2d at 378 ("In light of our recent decision in *People v. Stevens,* 460 Mich. 626, 597 N.W.2d 53 (1999) we need not decide whether the police violated the constitutional and statutory knock-and-announce-requirement under the circumstances of this case. Even if such a violation occurred, suppression of the evidence is not the appropriate remedy"); *Langford,* 314 F.3d at 894 ("Whether the police complied with the rule in this case is in dispute, but the dispute need not be resolved because we hold that violation of the rule does not authorize exclusion of evidence seized pursuant to the ensuing search"), precisely what *Richards* prohibits. This is exactly what the High Court has said we may not do. *See Shugart,* 889 F.Supp. at 974;

*Mazepink, supra,* 987 S.W.2d at 656–58; *Hoag,* 83 Cal.App.4th 1198, 1227, 100 Cal.Rptr.2d 556, 576 (2000) (Sims, Acting P.J., dissenting); *Stevens,* 597 N.W.2d at 70–71 (Cavanagh, J., dissenting). As Justice Cavanagh stated in dissent:

> "While [the Wisconsin] rule dealt with a blanket prospective preclusion of certain situations from a knock and announce requirement, and [the inevitable discovery rule] deals with a blanket preclusion from the application of the exclusionary rule, the actual effects of such rules are identical: the courts would be prevented from ever applying the exclusionary rule when faced with an unreasonable violation of the knock and announce principle."

*Stevens,* 597 N.W.2d at 70. "The rule stands; only the remedy differs," *Hoag,* 83 Cal.App.4th at 1214, 100 Cal. Rptr.2d. at 567 (Morrison, J., concurring), is not a sufficient answer. It "ignores the reality that an unenforceable rule-one whose violation has no adverse consequences for the violator-is in effect no rule at all." *Id.* at 1233, 100 Cal.Rptr.2d at 581 (Sims, Acting P.J., dissenting.).

By holding that the knock and announce principle is an element of reasonableness under the Fourth Amendment and that "the method of an officer's entry into the dwelling" is a factor to be considered when determining the reasonableness of a search and seizure, *Wilson,* 514 U.S. at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982, the Court quite clearly indicated that more than the validity of the warrant must be assessed, rather that the entry into the premises is itself is to be considered. This was reconfirmed by *Richards,* as we have seen, when it rejected the blanket rule exception to the knock and announce rule. 520 U.S. at 390 n. 1, 394, 117 S.Ct. at 1420 n. 1, 1421, 137 L.Ed.2d at 622 n. 1, 624. Applying the inevitable discovery rule, in total disregard of the knock and announce principle disregards this aspect of *Wilson.*

Cases in which the inevitable discovery argument has been presented, decided subsequently to *Stevens,* for the most part, have not adopted the *Stevens* rationale or reached the result that it did. To be sure, *United States v. Langford,* 314 F.3d

892 (7th Cir.2002); *United States v. Espinoza,* 256 F.3d 718 (7th Cir.2001) and *Mitchell v. Stegall,* 2002 WL 31875529, 2002 U.S. Dist. Lexis 24630 (2002) reached the result the *Stevens* court reached, but only *Langford* and *Stegall* referred to *Stevens* and purported to follow it.[15] *Stegall* was a case in which the accused sought issuance of a writ of habeas corpus upon, among other grounds, that the accused's counsel rendered ineffective assistance when he failed to file a motion to suppress evidence seized in the execution of a warrant in violation of the Michigan knock and announce statute. 2002 WL 31875529 at *3–4, 2002 U.S. Dist. Lexis 24630 at *9. In rejecting that argument, the court observed:

> "[E]ven if the police violated the knock and announce statute, such evidence would have been admissible under the Michigan Supreme Court's holding in *Stevens,* pursuant to the inevitable discovery rule. Petitioner is therefore unable to establish that his trial counsel was ineffective for failing to file a motion to suppress the evidence based upon a violation of Michigan's knock and announce statute, because he is unable to show that such a motion would have successfully led to the exclusion of this evidence."

2002 WL 31875529 at *4–5, *Id.* at *13. *Espinoza* was an appeal by the Government of an order suppressing evidence seized from the defendant's apartment during the execution of a search warrant in violation of the knock and announce rule. Stating that "[t]he exceptions to the knock and announce requirement are not pertinent to our review in this case," 256

---

**15.** In *United States v. Rhiger,* 315 F.3d 1283 (10th Cir.2003), rather than inevitable discovery in the knock and announce context, the issue was the propriety of the trial court's finding that there were exigent circumstances justifying the police entry into the defendant's home. After "[e]valuating [the] facts under the objective standard of a 'prudent, cautious and trained officer,' " *id.* at 1289, the court affirmed that finding, concluding that the "purchase and possession of materials used to manufacture methamphetamine, the strong odor of cooking methamphetamine emitting from the Brown residence, and Agent Mallory's knowledge of the inherent dangerousness of an active methamphetamine lab, establishes that reasonable grounds existed for the agents to believe there was an immediate need to protect the public by entering the home and discontinuing he lab's production." *Id.* at 1289–90.

F.3d at 723, the court considered the propriety of applying the exclusionary rule to the violation in that case. Concluding that "[t]he appropriateness of applying the exclusionary rule to a particular case is in large part the product of weighing and balancing [the] competing interests," of deterrence and social costs, *id.* at 724, and having weighed them and determined that the violation in that case did no harm to any of the interests that the Fourth Amendment protects, it held that exclusion of the evidence would be a disproportionate sanction. *Id.* at 725–29. *See United States v. Langford,* 314 F.3d at 895 ("The fruits of an unlawful search are not excludable if it is clear that the police would have discovered those fruits had they obeyed the law. That is the 'inevitable discovery' rule . . . without it the exclusionary remedy would over deter; and it is fully applicable here").

On the other hand, *Dice, supra, United States v. Holmes,* 183 F.Supp.2d 108 (D.Me.2002); *District of Columbia v. Mancouso,* 778 A.2d 270 (D.C.App.2001); *Tate, supra; Taylor, supra* and *Price v. State,* 93 S.W.3d 358, 2002 Tex.App. Lexis 8436 (2002), all reached the opposite result, after having directly considered and rejected an inevitable discovery argument. Moreover, although denying the defendant's motion to suppress on the basis of the good faith exception, which was premised on a violation of the knock and announce rule, the court in *United States v. Gonzalez,* 164 F.Supp.2d 119 (D.Mass.2001) rejected the Government's inevitable discovery argument. *Id.* at 123. It reasoned:

"The inevitable discovery doctrine is inapposite, for two reasons. First, it requires that the legal means for the inevitable discovery be 'truly independent.' *United States v. Silvestri,* 787 F.2d 736, 744 (1st Cir.1986). Here, there was only one search, and no other independent means of discovery appeared on the horizon. Compare *United States v. Zapata,* 18 F.3d 971, 978 (1st Cir.1994) (holding that inevitable discovery applied to search of uninsured, impounded car because subsequent inventory search of vehicle would have revealed contraband). Second, the doctrine requires that its application must not significantly weaken

Fourth Amendment protections. *See Silvestri*, 787 F.2d at 744. Were 'inevitable discovery' to apply here, there would essentially be no exclusionary remedy in cases of improper no-knock entry. This would significantly weaken, if not nullify, this important rule."

*Id.* n. 2. *See also Carroll v. State*, 149 Md.App. 598, 614, 817 A.2d 927, 936 (2003) (applying the exclusionary rule where the police purposefully refrained from seeking a "no knock" warrant, but nevertheless forcibly entered the premises to execute the warrant without knocking and announcing).

In *Dice*, although the argument was made only indirectly, the court addressed it, pointing out in the process:

"To prevail under that doctrine, the government must show 'that the evidence inevitably would have been obtained from lawful sources in the absence of the illegal discovery.' ... This requires the government to proffer clear evidence 'of an independent, untainted investigation that inevitably would have uncovered the same evidence' as that discovered through the illegal search.... Here, the government has not done this. In fact, the record evinces that there was only one investigation into Dice's activity, and that investigation culminated in the illegal entry we are now scrutinizing."

200 F.3d at 986–87. The argument in *Holmes* was that the inevitable discovery rule should apply to any search where the police have a valid warrant and the evidence would have been discovered even if the police had waited longer before entering the premises. 183 F.Supp.2d at 110. The court rejected that argument and, although there was a valid warrant in that case, noted that the government had not asserted an independent and legal means by which the evidence inevitably would have been discovered. *Id.* at 111. The court also commented on the effect of the government's argument: "The Government appears to suggest that no improper execution of a valid search warrant would necessitate suppression-this proposal

would render unnecessary any analysis of the proper execution of search warrants." *Id.*

An argument very similar to that adopted by the Michigan Supreme Court was made in *Price:*

"According to the State, the cocaine would have been acquired either way, whether the appellant had notice of the entry or not, as the warrant was its own independent source. Thus, as the State argues, the police would have lawfully entered the premises under the warrant whether or not the authorities had knocked and announced. According to this logic, the evidence would have likewise been inevitably discovered as a subsequent entry pursuant to the warrant would have superseded the no-knock entry"

93 S.W.3d at 358, 2002 Tex.App. Lexis 8436 at *20. Rejecting the argument, relying on *Marts* and *Dice,* the court stated:

"In making this argument, the State relies on the existence of the warrant to establish the evidence was discovered by means independent of any possible illegality. However, the very warrant the State relies on as an independent source was the warrant that was unlawfully executed. The search warrant, although legally obtained, was executed in violation of the Fourth Amendment, and its execution was directly connected to the illegal entry. . . . If the execution of the warrant was illegal, the State cannot invoke that very warrant as an independent source of the illegal entry."

93 S.W.3d at 371, *Id.* at *22–*23 (citations omitted). *See Tate, supra,* 257 Ill.Dec. 152, 753 N.E.2d at 352 (holding that the same reasoning applied to the resolution of the independent source doctrine also applies to the inevitable discovery rule); *Mancouso, supra,* 778 A.2d at 275 (noting that application of the inevitable discovery rule to the facts of that case "would nullify our prior suppression holdings in *West [v. United States,* 710 A.2d 866 (D.C.1998)] and *Griffin [v. United States,* 618 A.2d 114 (D.C.1992)] . . ., which also involved valid search warrants, and we as a panel deem ourselves bound by them."); *Mazepink, supra.,* 987 S.W.2d at 657 ("We reject the State's argument that exclusion of the evidence is not appropriate

because the evidence would have been inevitably discovered by legal means (the search warrant) despite the illegal entry"); *Taylor*, 733 N.E.2d at 312 (holding that "the inevitable discovery doctrine does not apply where the evidence was gathered directly as a result of a constitutional violation and appellee cannot show the evidence could have been gathered from an alternative legal method or procedure ... [and][i]f this court would apply the inevitable discovery doctrine to this case the knock and announce rule would cease to have any meaningful deterrent value"). *See also State v. Lee*, 836 S.W.2d 126, 130 (Tenn.Crim.App.1991), (refusing to apply the doctrine of inevitable discovery to the discovery to evidence seized pursuant to a warranted search that failed to provide the proper knock and announcement concluding that it "cannot envision how evidence contained in a private residence can be discovered without benefit of a properly executed search warrant").

The State's reliance on *[Dennis] Jones, supra*, 149 F.3d 715, the rationale of which the *Stevens* court found persuasive, 597 N.W.2d at 64, and *[Kip] Jones, supra*, 214 F.3d 836 is misplaced. To be sure, the court in *[Dennis] Jones* did comment that "[i]t is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant;" 149 F.3d at 716–17, but as noted by the dissenting justice, who forcefully and eloquently pointed out the flaws in the majority decision, it was inapplicable to the *Stevens* case, 597 N.W.2d at 66 (Cavanagh, J. dissenting), just as it is inapplicable to the case *sub judice.* Having noted that the statement was dictum,[16] Justice Cavanagh explained its inapplicability:

> "[T]he question before the court in *Jones* was whether evidence that had been seized by other officers from a defendant as he exited a residence should somehow be suppressed on the basis of a purported subsequent knock and announce violation that occurred *after* the seizure of the

---

**16.** That is not in dispute. *See United States v. Langford*, 314 F.3d 892, 894 (7th Cir.2002), in which the court reiterated the statement and indicated that it was being raised to a holding.

evidence. While the court felt the need to briefly discuss the state of knock and announce law in the course of its four paragraph opinion, the most important sentence followed the one quoted above. 'But because the entry at the front door played no role in the chain of events leading to Jones' seizure on the lawn, we, too, can leave the inevitable-discovery question for another day.' [*Jones,* 149 F.3d at 717]. Thus, the Seventh Circuit did not, in *Jones,* apply the inevitable discovery test to a knock and announce violation. Rather, it reached the conclusion, fairly obvious from the factual recitation above, that there was simply no causal link between the entry and the *prior* seizure of evidence."

*Id.* at 66–67 (footnote omitted). With respect to the context in which the statement was made, in addressing the argument that a defendant could not be heard to claim that he would have used the time the announcement gave to destroy the evidence, Justice Cavanagh pointed out:

"The obvious correctness of that statement ... seems to have a tendency to lead both some courts and advocates (both the majority and the appellate prosecutor here apparently falling within that group) to ignore the fact that the exigent circumstances exception exists precisely to preclude the favoring of this sort of wrongdoing, and to fail to grasp the application of the prosecutor's concession of an absence of exigent circumstances to remove this entire case from any inquiry of this sort."

*Id.* at 67 n. 12.

Similarly, *[Kip] Jones* is not an application of the inevitable discovery rule in the knock and announce context. As the Seventh Circuit itself acknowledged, "Jones does not contend that the officers violated 18 U.S.C. sec. 3109 or the fourth amendment ... by giving insufficient notice before using the battering ram." 214 F.3d at 837. Thus, the discussion of the inevitable discovery of the evidence despite the claim of illegal entry is pure dictum.

As indicated, there was a vigorous dissent to the *Stevens* majority opinion. It challenged the very premise of the

majority opinion's application of the inevitable discovery rule and questioned its adherence to Supreme Court precedents. Characterizing this opinion as "absolutely correct," and the *Stevens* Majority opinion as the "Alice–in–Wonderland version of inevitable discovery," Professor LaFave has equated the *Stevens* dissent with the observation by the *Dice* court that "to remove the exclusionary bar from this type of knock-and-announce violation whenever officers possess a valid warrant would in one swift move gut the constitution's regulation of how officer's execute such warrants." 5 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.4 (3rd ed.1996, 2001 Supp.). Other commentators agree. *See* Robin L. Gentry, *Why Knock? The Door Will Inevitably Open: An Analysis of People v. Stevens and the Michigan Supreme Court's Departure from Fourth Amendment Protection*, 46 Wayne L.Rev. 1659, 1689–90 (2000); Jenny Dobrovolec, *"People v. Stevens: The Michigan Supreme Court Applies the Inevitable Discovery Exception to the Exclusionary Rule When Officers Violate the Knock and Announce Statute,"* 78 U. Det. Mercy L.Rev. 569 (2001).

Because application of the inevitable discovery doctrine to the facts *sub judice* would read the knock and announce requirement of the Fourth Amendment out of the Constitution and, thus, permit forcible and unannounced entry in every search pursuant to a valid warrant, whether exigent circumstances exist or not, we affirm the judgment of the Court of Special Appeals.

JUDGEMENT AFFIRMED, WITH COSTS.